UNITED STATES of America,
Plaintiff–Appellee,

v.

William ESKRIDGE, Jr., Defendant–
Appellant.

No. 98–1377.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1998.

Decided Dec. 30, 1998.

Christian R. Larsen (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Michael J. Backes (argued), Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and
FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Defendant William Eskridge appeals his conviction for one count each of armed robbery of a motor vehicle in violation of 18 U.S.C. § 2119 and use of a firearm during that offense in violation of 18 U.S.C. § 924(c). Eskridge challenges the district court's decision to admit into evidence the redacted confession of his co-defendant. He also challenges the district court's determination that he obstructed justice, and therefore deserved a two-level increase in his base offense level under the Sentencing Guidelines. For the reasons stated herein, we affirm.

## I. BACKGROUND

During the early morning hours of November 21, 1992, William Eskridge, aided by co-defendant Tyrone Pointer, approached Allen Rembert outside the Subs N'Stuff restaurant in Milwaukee, Wisconsin and pointed a gun in Rembert's face. Eskridge and Pointer then proceeded to rob Rembert of his leather coat, the contents of his pockets (presumably including his car keys), the rings on his fingers and his shoes. The two defendants then asked Rembert where his car was parked. Rembert pointed to his 1977 Buick Regal with a customized "high rise" grill. Eskridge told Rembert to run or he would be shot, and Rembert began to run away. As he was running, Rembert turned around and saw Eskridge approach the driver's side of the car, while Pointer went to the passenger side. Rembert continued to run so he did not see the defendants enter his car, but he heard the sound of it being driven toward an alley. Rembert recognized the distinctive sound of his car because it had a hole in the muffler. He then saw the car being driven down the alley and he could tell that there were two people in it, though he could not see who they were. Later that morning, Rembert positively identified a photo of Eskridge as the man who pointed the gun at him during the robbery.

Eskridge and Pointer were tried jointly before a jury on April 20 and 21, 1993. At trial, Rembert identified Eskridge as the man who robbed him. Two other witnesses, Brenett Montgomery and Gail Harris, testified that immediately before Rembert was robbed, two men robbed them and a third individual at gunpoint near the Subs N'Stuff restaurant. Montgomery and Harris positively identified Eskridge as the man who brandished a gun during the robbery. Montgomery testified that after she and her companions were robbed, she saw the two robbers approach a young man wearing a leather jacket leaving the Subs N'Stuff restaurant. She observed the men cut this man off as he was heading to his car. Montgomery and her two companions then drove away, but soon returned to look for some money one of them had dropped in the street. Montgomery saw the young man standing in the street without his coat or car. Montgomery also observed the car with two people sitting in it. Gail Harris told Montgomery that she recognized one of the men as "Dollar Bill," who was the father of her sister's child. Harris identified Eskridge from a photo spread shortly after the robbery and from an in-person lineup. At trial, Harris identified Eskridge as Dollar Bill, the father of her sister's child.

Neither defendant testified. However, over Eskridge's objection, the government introduced the written confession of Pointer which implicated both Pointer and Eskridge, but eliminated any direct reference to Eskridge by replacing Eskridge's name with the word "another." The jury was instructed that Pointer's confession could only be used as evidence against Pointer. During closing argument, the prosecutor referred to Pointer's confession as implicating Eskridge. The prosecutor immediately caught and recognized his error, and thereafter referred to "another" rather than Eskridge.

The jury convicted both defendants on both counts. Eskridge argues on appeal that the district court erred when it admitted Pointer's redacted confession into evidence. He also appeals a sentencing enhancement he received for obstruction of justice.

## II. ANALYSIS

### A. *Bruton* violation.

Eskridge's first argument on appeal is that the admission of Pointer's redacted

written confession was reversible error because it violated his right to confrontation under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. We agree, based on the Supreme Court's recent opinion in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). However, we consider the error harmless.

In *Bruton*, a case involving the joint trial of two defendants—Evans and Bruton, the Court held that, despite the use of a limiting instruction, the introduction of Evans's out-of-court confession at Bruton's trial had violated Bruton's Sixth Amendment right to cross-examine witnesses. 391 U.S. at 137, 88 S.Ct. 1620. The Court recognized that in some circumstances a limiting instruction will adequately protect a defendant from the use of a co-defendant's incriminating statement at a joint trial, but held that it had failed to do so in that case. *Id.* Clearly, the use of Pointer's confession with the word "another" in place of Eskridge's name falls within the class of statements described in *Gray* as violative of *Bruton*.

In a recent case interpreting the *Bruton* rule, the Court addressed the type of confession at issue here, and held that a redacted statement that "replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol" violates a defendant's Sixth Amendment right. *Gray*, 523 U.S. 185, 118 S.Ct. at 1155. In *Gray*, the Court held that in a joint trial of two defendants, the use of one defendant's redacted confession violated the Sixth Amendment rights of the other defendant, despite the fact that the trial judge gave an instruction that it could only be used against the defendant who had confessed. *Id.*

The government concedes that admitting Pointer's redacted confession violated *Bruton* in light of *Gray*, but argues that the *Bruton* violation was harmless error. The Supreme Court has emphasized that

[t]he mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

*Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Thus, the issue before this court is whether the error in admitting Pointer's redacted testimony was harmless.

■ The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been "significantly less persuasive" had the improper evidence been excluded. *Id.* at 432, 92 S.Ct. 1056. In *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court set out several factors to assist in determining whether error is harmless in a particular case. Those factors include: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.*

Application of these standards to this case leads to the conclusion that the error was harmless because the independent evidence against Eskridge was more than sufficient to support his conviction. First, Eskridge was positively identified by Rembert on two separate occasions as the man who robbed him. Additionally, two other witnesses separately corroborated Rembert's identification. Finally, and most significantly, one of those witnesses, Gail Harris, recognized Eskridge as Dollar Bill, the father of her sister's child. Thus, in this case, we are not faced with the situation where a defendant is convicted based only on the potentially unreliable identification by a stranger witness. Rather, Eskridge was positively identified by a person familiar with him through past association. Consequently, we are convinced that Gail Harris's inherently reliable identification of Eskridge, combined with the positive identifications made by Rembert and Montgomery, leads to the conclusion that the prosecution's case would not have been "significantly less persuasive" had Pointer's confession

been excluded. In light of this evidence, Pointer's confession was cumulative and not critical to the prosecution's case, rendering the error of admitting Pointer's redacted confession harmless.

## B. Sentencing enhancement.

■ Eskridge also challenges the sentencing enhancement he received for obstruction of justice pursuant to U.S.S.G. § 3C1.1. At sentencing, the government presented evidence, through the testimony of Milwaukee police officer Gregory Fritz, that Eskridge attempted to intimidate or influence the testimony of two witnesses. Officer Fritz testified that approximately three weeks before trial, he interviewed an individual named Tony Watson who was then in custody on an open municipal violation. Watson told Officer Fritz that sometime in mid-January of 1993, Eskridge asked him to go to Gail Harris's sister's house and offer to return the items stolen from Harris and provide her with drugs if she wanted them. Officer Fritz testified that both Gail Harris and her sister told him that Watson did in fact communicate this message to them at Eskridge's request. Officer Fritz also testified that on February 2, 1993, his partner, FBI Special Agent Stan Knotts, received a phone call from the victim, Allen Rembert, who reported that earlier that day a woman identifying herself as "Coco" came to his house and said that she "had an offer for you from Eskridge." Rembert called Agent Knotts to tell him about the conversation. Based on this testimony, the government requested a two-point obstruction enhancement and Eskridge objected. The district court found that Eskridge obstructed justice and granted the enhancement.

■ Section 3C1.1 increases a defendant's base offense level by two levels if the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the proceedings against him. This court reviews the district court's finding that the defendant obstructed justice for clear error. *United States v. Friend*, 104 F.3d 127, 130 (7th Cir.1997). We will overturn the district court's factual findings at sentencing only if we have a firm conviction that a mistake has occurred. *United States v. Gabel*, 85 F.3d 1217, 1221 (7th Cir.1996).

Eskridge challenges this enhancement on two grounds. First, he argues that the district court erred in finding that he obstructed justice because it relied on hearsay evidence. Additionally, Eskridge argues that the obstruction enhancement is improper because one of the witnesses he is claimed to have attempted to influence lacks credibility because he is incarcerated and, therefore, has a motive to cooperate with the government.

■■ Eskridge's first argument is without merit. As the government correctly points out, Congress has explicitly permitted the use of hearsay testimony in sentencing proceedings. *United States v. Johnson*, 997 F.2d 248, 254 (7th Cir.1993). "Only if a defendant shows that the information before the court was inaccurate, and that the court relied on it can the defendant successfully challenge his sentence." *Id.* This court gives great deference to the district court's determination that hearsay is accurate, and will review that ruling only for an abuse of discretion. *Id.* Eskridge has failed to present any specific information suggesting that the statements of either Watson or Rembert were inaccurate or unreliable. Under these circumstances, the district court did not abuse its discretion by relying on Officer Fritz's testimony.

Eskridge's second argument is equally without merit. Eskridge asserts that Officer Fritz's testimony was unreliable because one of the potential witnesses, Tony Watson, was in custody and therefore motivated to lie. However, Eskridge has not presented any specific evidence that the hearsay testimony was inaccurate, other than his unsupported assertions. Therefore, there is no reason for us to concluded that the district court clearly erred when it found that Eskridge had obstructed justice.

## III.   CONCLUSION

For all the foregoing reasons, the judgment of the district court is AFFIRMED.