In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 02-1679, 02-1687 & 02-1739

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROBERT D. SUTTON, JAMES H.
FLEMING, and MICHAEL L. BROWN,

*Defendants-Appellants.*

---

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 01-CR-32-C—**Barbara B. Crabb**, *Chief Judge.*

---

ARGUED APRIL 14, 2003—DECIDED JULY 23, 2003

---

Before CUDAHY, POSNER, and EASTERBROOK, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Brown, Sutton and Fleming appeal their convictions and sentences for committing a series of armed robberies. They challenge the sufficiency of the effect on interstate commerce supporting the Hobbs Act charges. They also appeal the district court's refusal to allow admission of certain fingerprint evidence. Sutton and Brown appeal the admission at trial of Fleming's out of court confession claiming a violation of the Confrontation Clause. Sutton challenges the enhancement of his sentence for obstruction of justice. Finally, Fleming challenges the imposition of his multiple life sentences in a

consecutive, rather than concurrent, manner. None of the issues raised has merit. We affirm.

I.

The three appellants, Michael Brown, James Fleming and Robert Sutton, appeal their convictions and sentencing on a variety of shared and individual issues involving a series of robberies they committed in and around Madison, Wisconsin, including the robbery of a Wendy's Restaurant ("Wendy's"), a Kohl's Food Store ("Kohl's"), and a Great Midwest Bank ("Midwest Bank"). In all, there were eleven robberies resulting in a twenty-one count indictment.

Prior to trial, both the defendants and government made motions in limine to exclude certain evidence. The government sought to exclude the admission of certain fingerprint evidence. At the robberies of the Kohl's and Wendy's the police had collected fingerprints from locations that witnesses had identified as having been touched by the robbers. Analysis by the police fingerprint laboratory concluded, however, that the prints taken from the crime scenes did not match the defendants' fingerprints. The defendants sought to admit this evidence to demonstrate that they were not the robbers. The district court granted the government's motion to exclude because the defendant failed to call an expert witness to explain the reports. The district court reasoned that without an expert witness's explanation the reports were of no evidentiary value.

Sutton and Brown's motion in limine sought, *inter alia*, to exclude the testimony of Detective Dandurand, who was to testify about the confession of co-defendant Fleming, as a violation of their Confrontation Clause rights. *See Bruton v. United States*, 391 U.S. 123 (1968). The government redacted the names of Brown and Sutton, replacing

them with neutral identifiers. The district court found that the redaction met the requirements of the Confrontation Clause, and denied the defense motion.

Prior to the federal trial in the present case, Sutton was tried for the Midwest Bank robbery in a state court proceeding held in Dane County Circuit Court. At that trial, Sutton and a woman, Lashecka Calvin, testified that they were together at a place far from the bank during the Midwest Bank robbery, thus providing an alibi for Sutton. Sutton was acquitted by the jury in that trial. For the present federal case, Sutton had listed Calvin as an alibi witness and subpoenaed her. Testifying before the grand jury in the present case, Calvin, together with another woman, Angela Cramer, recanted Sutton's alibi and testified that Sutton had asked them to lie about being with him at the time of the robbery. Cramer also testified to this at trial.

Brown, Fleming and Sutton were convicted by the district court of multiple counts of conspiracy to violate, and substantive violations of, the Hobbs Act, 18 U.S.C. § 1951; of numerous bank robberies under 18 U.S.C. § 2113(a); and of use of firearms to commit robberies under 18 U.S.C. § 924(c). Not every defendant was charged in every substantive count because not all defendants were involved in every robbery. Although found guilty of all the other counts with which he was charged, Fleming was found not guilty of using a firearm in the Clark Retail Enterprises robbery (Count 9), which is not at issue in this appeal.

Before and after the verdict, the defense moved for acquittal pursuant to Fed. R. Crim. P. 29, based on the argument that the government had failed to show the requisite effect on interstate commerce necessary to support a Hobbs Act conviction. The court denied both motions.

Brown was sentenced to 73 years and 4 months imprisonment.[1] Fleming, per 18 U.S.C. § 3559(c)'s three-strikes provision, was sentenced to life in prison on each count for which he was convicted. The life sentences for Fleming's § 924(c) convictions were imposed consecutively, as required by § 924(c)(1)(D). Sutton received a sentence of 52 years and 3 months. His sentencing included a two-level sentencing enhancement under U.S. Sentencing Guidelines Manual § 3C1.1 ("U.S.S.G.") for obstructing justice by providing a false alibi defense in Sutton's state case, and attempting to do so during the federal case.

There are five issues on appeal. First, all of the appellants claim that the government did not provide sufficient evidence of an effect on interstate commerce to support the Hobbs Act convictions. Second, the appellants all challenge the exclusion of the government's fingerprint reports. Third, Brown and Sutton appeal the district court's decision to allow Detective Dandurand to testify about Fleming's confession. Fourth, Sutton appeals the district court's obstruction of justice finding and subsequent sentence enhancement of two levels. Fifth, Fleming appeals his consecutive life sentences.

---

[1] There appears to be some confusion as to the actual length of Brown's sentence. The government's brief states that the "court sentenced defendant Brown to 340 months in prison." Appellee's Br. at 6. However, our examination of the record indicates that Brown's "total sentence of imprisonment is 73 years and 4 months." R. 198 at 3. Additionally, the record does not reveal to us what, if any, enhancements he received. This does not affect the present appeal because Brown does not appeal his sentencing.

## II.

### A. Hobbs Act

All three defendants appeal the court's decision that there was sufficient effect on interstate commerce to support the indictments' counts under the Hobbs Act. They argue that, after the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000), the government must prove a "substantial effect" on interstate commerce in order for there to be jurisdiction to prosecute under the Hobbs Act, and failed to do so. 18 U.S.C. § 1951.

However, the defendants acknowledge that this argument has been rejected by this court in the past. We have ruled definitively that the Hobbs Act only requires that the government show a de minimis effect on interstate commerce to "bring robbery within its prosecutorial reach." *United States v. Peterson*, 236 F.3d 848, 851-52 (7th Cir. 2001).[2] The defendants also acknowledge that application of the government's "depletion of assets" theory easily meets the de minimis effect standard. We find nothing in the defendants' arguments that would persuade us to overrule established circuit precedent.

---

[2] With the obvious predicate requirement that the class of transactions or the types of businesses affected must have a substantial connection to interstate commerce, such that interference with that class of transactions would have a substantial effect on commerce—even if the specific events prosecuted do not, themselves, have a substantial effect on interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 123 S. Ct. 2037, 2040 (2003); *United States v. Thomas*, 159 F.3d 296, 297-98 (7th Cir. 1998). The aggregate transactions of banks, restaurants and retail stores, such as those robbed by the defendants, clearly meet that requirement.

## B. Fingerprint Evidence

The admission or exclusion of evidence (when objected to at trial) is reviewed for abuse of discretion. *United States v. Bonner*, 302 F.3d 776, 780 (7th Cir. 2002). However, the jury's verdict will stand if the evidentiary error is harmless. An error will be found harmful only if it had a "substantial and injurious effect or influence on the jury's verdict." *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 621 (7th Cir. 2003) (internal quotations omitted).

The district court refused to admit two of the government's fingerprint reports into evidence because the defense, which wanted to use the reports' conclusions to demonstrate that the defendants were not present at two of the robberies, failed to call or subpoena an "expert" to explain the report. R. 185 at 64. The decision to exclude the reports was not an abuse of discretion, and to the extent there was any error by the district court, it was harmless.

This issue involves a number of interrelated concerns. To begin with, the defendants argue that the reports are admissible as self-authenticating documents that fall within the public records exception to hearsay. It is likely true that the fingerprint reports are self-authenticating and fall within the public records exception to hearsay, but this is not enough to make them admissible. The reports appear to be certified copies of public records that meet the self-authentication requirements of Federal Rule of Evidence ("FRE") 902, and would not have required a foundation witness. Neither the district court nor the government disputes the authenticity of the fingerprint reports. Additionally, the evidence was a report of a public office setting forth the opinions of that office resulting from a police investigation into the Wendy's and Kohl's robberies, and likely not excludable as hearsay. *See* FRE 803(8)(C). The Supreme Court made clear in *Beech Aircraft Corp. v.*

*Rainey*, 488 U.S. 153, 163-64 (1988), that the Rule 803(8)(C) exception encompasses opinions and conclusions and is not limited to purely factual findings. In *Beech Aircraft Corp.*, an investigative report of an airplane crash contained the investigator's opinion concerning whether pilot error was the cause of the accident. *Id.* at 158. The Supreme Court ruled that the opinions contained in the report were also covered by the exception to the hearsay rule contained in Rule 803(8)(C). *Id.* at 170. The state's fingerprint reports, which express the conclusions and opinions of a state laboratory technician concerning the discovered fingerprints, are similarly not excludable as hearsay.[3]

But hearsay goes only to the form of the testimony. The testimony itself must still be substantively admissible. The "testimony" at issue consists of the statements in the fingerprint reports themselves. The district court did not specifically invoke any particular rule of evidence in excluding the fingerprint reports. In the hearing on the motions in limine, the court noted that the "reports may be admissible under the public records exception, but without an expert to explain them, they are of no evidentiary value." R. 185 at 64. In its written ruling granting this portion of the government's motion, the court stated that "[w]ithout [expert witnesses], defendants have no reliable evidence to put before the jury of the lack of fingerprint identification." R. 130 at 4.

The court's ruling is susceptible to various interpretations. We believe the court was excluding the evidence

---

[3] The government, unlike the defendants, is not covered by the exception in Rule 803(8)(C), and would be barred by Rule 802 from entering the reports into evidence. Instead, the prosecution would have to present live testimony to analyze the fingerprints and testify to the match, or lack of match, between the fingerprints at the crime scene and the fingerprints of the defendants.

because the report, without a witness to explain it, failed to meet the requirements of Rule 403: the reports' probative value was substantially outweighed by the danger of unfair prejudice.[4] We begin this analysis by noting that the reports were relevant. To the extent that the fingerprints lifted were not those of the defendants, the reports decreased the probability that a defendant touched the spot where the prints were found. However, the probative value of the reports is slight. The reports do not prove the negative: the lack of a match does not prove that the defendants were not present at the crime scene. In fact, without any additional expert testimony to provide context for the reports' conclusions or with respect to the likelihood of fingerprints being found in those places and on those surfaces, the probative value of the reports begins to approach zero asymptotically. On the other hand, and more significantly, the possibility that a jury would rely on these reports in the absence of context and believe that the reports did prove the negative

---

[4] We also note in passing that the district court's use of the phrases "evidentiary value" and "reliable evidence" is also susceptible to the interpretation that the reports' expert testimony was inadequate under Rule 702. There is no question that fingerprint analysis, as a general methodology, meets the requirements of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and FRE 702. *See United States v. Havvard*, 260 F.3d 597 (7th Cir. 2001). However, the language of the district court could be interpreted to indicate that, in this particular case, the specific testimony at issue (in the form of the report), fails to demonstrate that the "testimony is the product of reliable principles and methods" or that it fails to show that the "witness has applied the principles and methods reliably to the facts of the case." FRE 702(2) and (3). Given that the reports consisted of little more than a bare conclusion, we would have little difficulty finding their exclusion appropriate within this analytical framework.

may create a substantial probability of prejudice. It is not an abuse of discretion for the court to be so inclined and therefore to exclude the evidence.

Finally, to the extent that there could be error in the exclusion of the reports, it was harmless. As mentioned, the probative value of the reports alone is minimal. In light of the other evidence arrayed against the defendants, the exclusion of the reports cannot be said to have had a substantial and injurious effect or influence on the jury's verdict.

## C.  Fleming's Confession & *Bruton*

Although the decision to admit or deny evidence is reviewed for abuse of discretion, a district court's interpretation of the Confrontation Clause of the Sixth Amendment is a legal question that we review de novo. *United States v. Hernandez*, 330 F.3d 964, 972 (7th Cir. 2003).

The use of a non-testifying criminal defendant's confession against him during a joint trial risks violating the Confrontation Clause rights of the co-defendants. *Bruton*, 391 U.S. 123. If the confession incriminates the co-defendants, then those defendants are denied their rights under the Confrontation Clause to cross-examine the witnesses against them, and their trials must be severed if the confession is to be used. However, as the Supreme Court and this court have both recognized, there are ways to use the confession without incriminating the co-defendants, and thus protect the rights of the co-defendants. Proper redaction of the confession to eliminate all references to the co-defendants, combined with a limiting instruction to the jury that it may not consider the confession against anyone other than the confessing defendant has been found adequate. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Additionally, a redaction that replaces co-defendant names with neutral pronouns such

that there is no obvious reference to the co-defendants will, along with limiting instructions, suffice to protect co-defendants' Confrontation Clause rights. *Gray v. Maryland*, 523 U.S. 185, 196 (1998) (validating, in dictum, the use of "a few other guys" as a replacement for names in a confession that would avoid a *Bruton* violation); *Hernandez*, 330 F.3d at 973; *United States v. Brooks*, 125 F.3d 484, 501 (7th Cir. 1997); *United States v. Hubbard*, 22 F.3d 1410, 1421 (7th Cir. 1994). It is clear that the court provided the appropriate limiting instructions to the jury regarding Fleming's confession. But there is a dispute concerning the redactions of Brown's and Sutton's names from the confession.

Fleming's confession, as introduced through the testimony of the detective who solicited it, was edited by redacting the names of Brown and Fleming, and replacing their names with "another individual," "other individual(s)," "other individual in Madison," "other individual robber," "an individual," "the individual," "this individual," "two individuals," "third individual," "this person," "that person," "other person," "the guy" and other combinations of these. R. 183 at 5-A-107 to 133. This kind of redaction is not a blank space deletion of the kind found improper in *Gray*. There, the witness read the confession into evidence, saying the word "deleted" or "deletion" whenever the co-defendants' names appeared. *Gray*, 523 U.S. at 188. However, Sutton and Brown argue that the present case meets the larger, more general prohibition of *Gray* against redactions that replace names with "a symbol or other similarly obvious indications of alteration . . . that . . . so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result." *Id.* at 192. Brown and Sutton rely on this court's interpretation of *Gray* in *United States v. Hoover*, 246 F.3d 1054 (7th Cir. 2001), where the names of two gang leader defendants—one in prison, one not in prison—were replaced with "incarcerated

leader" and "unincarcerated leader," respectively. The use of replacement words that fail to "avoid[ ] a one-to-one correspondence between the confession and easily identified figures sitting at the defense table" violates *Bruton*. *Id.* at 1059. Brown and Sutton also point us towards *United States v. Eskridge*, 164 F.3d 1042 (7th Cir. 1998), where this court found the replacement of the codefendant's name with "another" was a *Bruton* violation, but was found to be harmless error.

Unlike *Hoover*, there is no clear one-to-one correspondence between the replacement words, such as "another person," and either of the defendants. In *Hoover*, "incarcerated leader" was the equivalent of using a nickname, and the immediate one-to-one correspondence to the defendant was unavoidable. *Hoover*, 246 F.3d at 1059. "Another person" and similar neutral words used in the present case create no such immediate identification, especially given that there were multiple people, identified and unidentified, involved in the various crimes detailed in Fleming's confession. *See Hubbard*, 22 F.3d at 1421 (finding no *Bruton* violation when confession redacted and name replaced with "other person" and only connection to co-defendant is a "contextual implication" from other evidence). The connection of "another person" to either Brown or Sutton comes only through inference and the context of other evidence presented. The redaction attenuates that inference sufficiently for the purposes of *Bruton*, and makes the present case clearly distinguishable from *Hoover*. *See Richardson*, 481 U.S. at 208.

While Sutton's case presents no additional unusual circumstances, Brown argues that the references in the confession to the "after hours club" where the conspirators gathered and planned their crimes makes it clear that one of the "other persons" that the confession names must, necessarily, be Brown. Brown's argument centers

around the following testimony from Detective Dandurand concerning a planning session for one of the robberies.

> Q: Detective Dandurand, did Mr. Fleming in his interview statement tell you that a Stacy Pete was also at the club, that after hours club that evening?
>
> A: Yes, he did.
>
> Q: Did he indicate she was playing with a handgun at the after hours club?
>
> A: Yes. What Mr. Fleming explained was that at the club Stacy Pete had a handgun and she was waving it around in jest and making some comments that she was going to knock off a bank.

Dandurand Direct Testimony, R. 183, at 5-A-109. Brown argues that the ability of Stacy Pete to wave a gun around and talk of robbing a bank meant the club owner endorsed her behavior and must have been involved in the robberies. Therefore, the club owner must be one of the unnamed individuals. Other evidence specifically named Brown as the owner of the after hours club in question. We are unconvinced. None of the redactions replaced Brown's name with "owner of the after hours club," nor is the owner of the club mentioned in Fleming's confession. In order to reach the conclusion argued by Brown, the jury would have had to pursue an extended inferential chain of reasoning: 1) Stacy Pete waved a gun and mentioned a bank robbery at a club; 2) She could only do that if the club owner endorsed her behavior; 3) If the club owner endorsed this behavior, he must be involved in the robberies; 4) If he was involved in the robberies, he must be a defendant; and finally, 5) because he is never expressly mentioned elsewhere in the confession, he must be one of the unnamed "individuals" in the confession. This inferential chain is far from the express identification involved in *Hoover*, where a jailed gang leader's name was

replaced with "incarcerated leader." *Hoover*, 246 F.3d at 1054. If Brown's name had been replaced with "after hours club owner," then his situation would be more comparable to that of *Hoover*.

*Eskridge* is of limited use to the defendants because the government's concession in that case that there was a *Bruton* violation and the court's dominant focus on the harmlessness of the error resulted in a very cursory discussion of the redaction. *Eskridge*, 164 F.3d at 1044. We believe it is distinguishable from the present case principally because there were only two people involved in the crime altogether, and any reference to "another" person would necessarily refer to the co-defendant. In the present case there were drivers, gun suppliers and co-conspirators of all kinds, with different individuals being involved in different roles for different crimes. "Another individual" could refer to many people besides Brown and Sutton.

There was, therefore, no *Bruton* violation in the redaction of Fleming's confession. Additionally, to the extent that there was a violation, the substantial amount of other evidence incriminating Brown and Sutton, including significant testimony from various criminal collaborators, would render the error harmless.

### D. Obstruction Enhancement for Sutton

Sutton also challenges the district court's two-level enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1.[5] We review a district court's find-

---

[5] U.S.S.G. § 3C1.1 says "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution,

(continued...)

ing that a defendant obstructed justice for clear error. *United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003). Sutton argues that Lashecka Calvin's testimony recanting her earlier alibi testimony offered at the state trial is a classic case of "he said, she said," and not sufficient to support the § 3C1.1 enhancement. Additionally, Sutton claims that his acquittal by a jury in state court demonstrates that his alibi was not false and that Calvin's testimony in federal court recanting the alibi is a lie. Sutton's arguments are unpersuasive.

For the purposes of Sutton's federal sentencing, the relevant fact is that the district court found that he had attempted to convince Calvin to lie to federal authorities for him. The district court found that "Sutton arranged for false testimony to be given by Lashecka Calvin to give him an alibi for that robbery" and that Sutton "[filed] the alibi notice listing Lashecka Calvin as somebody who would testify . . . that he was with her and not at the bank when it was robbed." Sutton Sentencing Tr. at 10. The Sentencing Guidelines and this circuit's precedents make clear that attempting to influence a witness to make false statements to investigating authorities qualifies as an obstruction of justice under § 3C1.1. *See* U.S.S.G. § 3C1.1, cmt. n.4(a); *United States v. Friend*, 104 F.3d 127, 130-31 (7th Cir. 1997); *United States v. Ross*, 77 F.3d 1525, 1534-35, 1549-50 (7th Cir. 1996); *United States v.*

---

[5] (...continued)

or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." Application Note 4(a) gives "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" as an example of conduct to which the adjustment is supposed to apply. U.S.S.G. § 3C1.1, cmt. n.4(a).

*Wright*, 37 F.3d 358, 361-62 (7th Cir. 1994). The district court found that Sutton attempted to influence Lashecka Calvin (as well as Angela Cramer) to provide him a false alibi in the present case.

Sutton's argument that this is merely a "he said, she said" situation is simply an attack on the sufficiency of the evidence supporting the court's findings of fact—in the present case, credibility of witnesses. Sutton's unsupported assertions are insufficient to make the district court's credibility finding clearly erroneous. *United States v. Agostino*, 132 F.3d 1183, 1198 (7th Cir. 1997). Similarly, Sutton's argument that the state court acquittal precludes a finding that his alibi was false is also unpersuasive. Given his conviction for the Midwest Bank robbery and the district court's finding that he attempted to influence Calvin and Angela Cramer to lie for him, his insistence that his alibi cannot be false rings of irrational denial. Sutton can provide us with no authority for the proposition that the district court was not permitted as a matter of law to find the alibi false. And otherwise his assertions are nothing more than attacks on the sufficiency of the evidence—attacks that do not persuade us that the enhancement was clearly erroneous.

### E. Consecutive Life Sentences for Fleming

Finally, we are also unpersuaded by Fleming's argument that the district court erred because it imposed his life sentences consecutively under § 924(c)(1)(D)(ii)[6] instead

---

[6] 18 U.S.C. § 924(c)(1)(D)(ii) states in relevant part:

"Notwithstanding any other provision of law— . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of impris-
(continued...)

of concurrently. Statutory interpretation is a matter of law and is therefore reviewed de novo. *APS Sports Collectibles, Inc., v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002). Fleming's argument is two-fold: (1) Fleming attempts to argue that he was sentenced under 18 U.S.C. § 3559(c),[7] not § 924(c), and (2) therefore the district court had the discretion to impose concurrent sentences under § 924(c) instead of consecutively as the statute mandates. In essence, Fleming argues that because he was sentenced under § 3559, the district court should have properly imposed the sentences concurrently.

Fleming's argument fails in both respects. He was not sentenced under § 3559, and therefore the district court did not have discretion to impose his sentences concurrently. Section 3559 describes no crime under which a defendant can be sentenced—it is merely a sentencing provision that is dependent on the "third strike" crime that triggers its application. *See United States v. Boone*, No. 97-4094, 1998 U.S. App. LEXIS 15270, at *11 (4th Cir. July 9, 1998); *United States v. Eubanks*, No. 98-4053, 1998

---

[6] (...continued)
onment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."

[7] 18 U.S.C. § 3559(c)(1) states in relevant part:

"Mandatory life imprisonment.—Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—

(A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of—

(i) 2 or more serious violent felonies;"

U.S. App. LEXIS 29372 (4th Cir. Nov. 18, 1998). The triggering crime for Fleming was a violation of § 924(c). Therefore, Fleming was sentenced for his crime under § 924(c), and required to receive life imprisonment according to § 3559. Because he was sentenced under § 924(c), the sentences must be imposed consecutively. *United States v. Garrett*, 903 F.2d 1105, 1114 (7th Cir. 1990) (finding that § 924(c) unambiguously requires imposing consecutive sentences). The spectacular improbability of serving consecutive life sentences notwithstanding, the sentencing was proper.

AFFIRM

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*