**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2006
Decided November 21, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Nos. 05-1645 & 05-1666

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | Nos. 03-20004-001, 03-20004-002 |
| ROSS THACKER and SEMAJI WARREN, *Defendants-Appellants.* | Michael P. McCuskey, *Chief Judge.* |

**O R D E R**

Ross Thacker and Semaji Warren were convicted after separate jury trials of robbing several convenience stores in Champaign County, Illinois, and carrying a firearm during the robberies. *See* 18 U.S.C. §§ 1951, 924(c). Warren was also convicted of possession of a firearm by a felon, *id.* § 922(g)(1). Both men received whopping sentences for their crimes: 400 months for Thacker and 600 months for Warren. Thacker appeals one of the district court's evidentiary rulings. Warren filed a notice of appeal, but his appointed counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), contending that any appeal would be frivolous. Warren filed a response to counsel's *Anders* brief, urging us to find that his appeal has merit. We affirm Thacker's convictions, and we grant Warren's attorney's motion to withdraw and dismiss his appeal.

Three robberies, notable for the small amounts of money each one yielded, are at issue in this appeal. Shortly before 11:00 p.m. on January 29, 2002, Thacker

and Warren robbed a Casey's Store, making off with approximately $170 cash and another $130 in Newport cigarettes and gift certificates. Several hours later, they robbed a Colonial Pantry store, taking $50 in cash and seven cartons of Newport cigarettes, worth approximately $250. The third robbery occurred on March 22, 2002, at a Bigfoot convenience store; the defendants took $250 in cash and $150 worth of Newport cigarettes, as well as a customer's wallet.

The *modus operandi* for each robbery was the same. Before the defendants entered the stores, one or both of their girlfriends, Alesha Workman (Thacker's girlfriend) and Angela Warfield (Warren's), went in and purchased snacks. The girls then left and the defendants entered, armed with one or two guns, their faces obscured by masks and bandannas. Once in, they robbed the attending clerks at gunpoint. On one occasion, one of the defendants pistol-whipped an employee. After the third robbery, which involved the Bigfoot store, police officers responding to a 911 call saw two men fleeing the scene. They caught Thacker, arrested him, and found on his person $255 in cash, a blue stocking cap, and a pair of clear plastic gloves. These items appeared similar to those worn by one of the robbers depicted in the security videos. Police officers later obtained a search warrant for Warren's residence, where they seized a loaded pistol wrapped in a Bigfoot bag, a pair of shoes that matched a footprint at one of the convenience stores, and a pair of jackets matching those worn by the robbers in the security videos.

Warren was charged with all three robberies in federal court. Although he chose not to testify, he had earlier confessed to committing them. He disputed only having carried a firearm during the offenses, contending that he had a BB gun rather than a real pistol. Workman and Warfield testified against Warren (as they later did against Thacker), describing the robberies and confirming the defendants' involvement. Additionally, the clerk on duty at each of the stores testified, as did customers in two of the stores. Two teenage girls who drove by the Bigfoot store shortly after the robbery also testified that they saw Warren walking nearby. One of them had identified Warren in a photo lineup. The government also introduced video recordings of the robberies at Colonial Pantry and Bigfoot. The jury returned a guilty verdict on all counts.

Thacker was first charged with the robberies in state court. In an interview with an Illinois police officer, he confessed to committing the Colonial Pantry and Bigfoot robberies but denied any involvement in the Casey's robbery. He pleaded guilty to robbing the Colonial Pantry store under a deal in which state prosecutors promised to limit the charge only to that crime, provided that Thacker told the truth about the other robberies. The state court sentenced him to six years' imprisonment. Only then did Thacker find himself facing federal charges for interference with interstate commerce by robbery, a violation of the Hobbs Act, 18 U.S.C. § 1951, and associated firearms offenses. The federal charges covered both

the two robberies to which he had confessed in his interview and the Casey's robbery. He again admitted robbing the Bigfoot store but denied any involvement in the Casey's robbery. The jury found him guilty of robbing the Bigfoot and possessing a firearm, but was unable to reach a verdict as to the Casey's robbery, leading to a mistrial. At a subsequent trial at which Warren testified against him, Thacker was found guilty of the remaining offenses.

## A. Ross Thacker

On appeal, Thacker argues that the district court abused its discretion by granting a government motion *in limine* to block all evidence concerning his state court plea negotiations and the ensuing agreement. Although Thacker took the stand, he did not seek to describe the agreement himself; instead, he wanted to introduce this evidence through examination of the Illinois detective or by way of testimony from the state prosecutor and his state defense attorney. He contends that evidence of the plea agreement would have bolstered his credibility by showing that he had no incentive to lie when he denied participating in the Casey's robbery during the interview with the Illinois detective. Had he participated in the Casey's robbery, he maintains, he would have confessed because he faced no threat of state prosecution under his plea deal: he was simply required to admit to the Colonial Pantry robbery and tell the truth about any other robberies. The district court held that the evidence was irrelevant, *see* Fed. R. of Evid. 401, and that whatever minor relevance it might have had was outweighed by a likelihood of confusing the jury, *see* Fed. R. Evid. 403.

Thacker's basic theory of relevance – that the state authorities' promise not to prosecute him for any additional robberies would necessarily lead him to come clean about other crimes, especially those for which there was not yet any evidence of his involvement – is shaky. We can think of a number of reasons why he might have refrained from confessing to the Casey's heist: perhaps he feared a federal prosecution, or that three armed robberies rather than two would subject him to liability under the Armed Career Criminal Act, 18 U.S.C. § 924(e), or that state authorities would renege on the deal if they realized that he had committed a string of offenses rather than just one or two. Thacker argues, nevertheless, that the jury should have been able to weigh this evidence. He contends that his situation is simply the mirror image of cases in which the government is permitted to introduce the plea agreement of one of its cooperating witnesses in order to show that the witness has agreed to tell the truth or lose his own plea arrangement. *See United States v. Montani*, 204 F.3d 761, 765–66 (7th Cir. 2000). But in the latter situation, a cooperating witness must face cross-examination by the defense, which can explore the entire deal rather than just the particulars that the government wishes to introduce. Here, by contrast, Thacker wanted to use the Illinois detective and state court attorneys to bring in evidence of his plea agreement, rather than

testifying himself about the matter and facing impeachment. *See United States v. Greene*, 995 F.2d 793, 798–99 (8th Cir. 1993). At argument, Thacker's counsel represented (and the government conceded) that the district court's decision blocked any potential testimony about the agreement, including his own, but the fact remains that Thacker attempted to introduce the evidence only through the testimony of others.

Moreover, even assuming that the district court's order also covered Thacker's own testimony and that his analogy to the government's practice is apt, the fact remains that the district court relied in the alternative for its ruling on Rule 403, which bars relevant evidence if its probative value is outweighed by the danger of confusing the jury. The court reasonably concluded that evidence of the state plea agreement would confuse the jury by leaving the impression that the authorities went back on their word not to prosecute Thacker for other robberies. Although it was a state prosecutor who told Thacker that he could plead to the Colonial Pantry robbery and admit his other offenses without risk of prosecution, this subtlety may have been lost on the jury.

In support of his argument, Thacker cites *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990). (He did not mention this case until his reply brief, but it supports arguments that he had already presented.) That case involved the Defense Department contractor Wedtech. In it, the district court excluded evidence that the defendant, Wedtech's former president, refused an offer of complete immunity in exchange for implicating others in a scheme to bribe government officials to secure a lease. *Id.* at 690. Defendant's primary defense at trial was that he was unaware of his subordinates' wrongdoing, and he argued that his rejection of the immunity offer showed a "consciousness of innocence." *Id.* The Second Circuit agreed, finding the evidence relevant, and reversed: "Though there may be reasons for rejecting the offer that are consistent with guilty knowledge, such as fear of reprisal from those who would be inculpated, a jury is entitled to believe that most people would jump at the chance to obtain an assurance of immunity from prosecution and to infer from rejection of the offer that the accused lacks knowledge of wrongdoing." *Id.*

But even assuming that there are some pertinent similarities in the two cases, in *Biaggi* the evidence against the defendant was quite weak, making the question of the excluded evidence critical. *See Biaggi*, 909 F.2d at 692. Here, by contrast, the evidence against Thacker was overwhelming, and so any possible error in excluding testimony about the plea agreement was harmless. *See United States v. Holt*, 460 F.3d 934, 938–39 (7th Cir. 2006). All three of Thacker's compatriots testified that he participated in the Casey's robbery. Thacker argues that their testimony was hardly impartial, but other evidence tied him to the Casey's job as well. The clerk who was on duty at the Casey's store during the robbery described one of her assailants as wearing the same clothes and bandanna that were shown in

a video of the second robbery that evening, at the Colonial Pantry store—clothing and a bandanna that Thacker admitted to wearing. The clerk also testified that she was "positive" that the bag carried by the man wearing the bandanna in the video was the same that had been carried by the man wearing the bandanna during the Casey's robbery. Finally, the *modus operandi* for the Casey's robbery was exactly the same as for the two other robberies to which Thacker admitted, including one just several hours earlier. *See United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005). In each one, the girlfriends went in to scope out the store and then the defendants entered wearing a mask and bandanna and proceeded to steal roughly the same amount of cash and the same brand of cigarettes. Any error in excluding the evidence was harmless in light of the government's strong case.

## B.  Semaji Warren

Warren responded to counsel's *Anders* brief, *see* Cir. R. 51(b), and so we confine our review to the potential issue he raises and the issues identified in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002). Both Warren and counsel explore the sufficiency of the evidence on his convictions under the Hobbs Act, 18 U.S.C. § 1951, specifically the Act's jurisdictional requirement. Knocking over a few neighborhood convenience stores is a federal offense only if it in some "way or degree obstructs, delays, or affects" interstate commerce, § 1951(a), and Warren suggests that he could argue that insufficient evidence was introduced to meet this jurisdictional requirement for the Colonial Pantry robbery. He also asserts that there was no testimony that the Newport cigarettes he stole actually moved in interstate commerce.

Meeting the jurisdictional requirement of the Hobbs Act is not as onerous as Warren assumes, however. Given the broad language in the Act, even a *de minimis* effect on interstate commerce is sufficient.  *See United States v. Peterson*, 236 F.3d 848, 851 (7th Cir. 2001). Under the "depletion of assets" theory, commerce is affected when a business that usually purchases goods from out-of-state has any of its assets stolen, limiting its future ability to transact business.  *See United States v. Re*, 401 F.3d 828, 835 (7th Cir. 2005). Thus, there was no need for the government to show that the particular cigarettes that were taken had been purchased from out-of-state; it was enough that the government introduced evidence that Colonial Pantry customarily purchased some items, like gasoline, beer, and other cigarette brands, from out-of-state distributors. Courts have routinely found the Hobbs Act's jurisdictional element met in similar robbery cases. *See United States v. Sutton*, 337 F.3d 792, 796 (7th Cir. 2003); *United States v. Curtis*, 344 F.3d 1057, 1070–71 (10th Cir. 2003); *United States v. Elias*, 285 F.3d 183, 189 (2d Cir. 2002). Any potential argument on this point would be frivolous.

Counsel also explores whether any sentencing issues could be raised. Warren received a total sentence of 50 years, or 600 months: 92 months for his three Hobbs Act convictions and for his conviction of possession of a firearm by a felon, U.S.S.G. §§ 2B3.1, 2K2.1(a)(6), 3D1.4, 4A1.1; seven years (84 months) for his first conviction of using a firearm during a robbery, 18 U.S.C. § 924(c)(1)(A)(ii), to run consecutively; 25 years (300 months) for his second such conviction, *id.* § 924(c)(1)(C)(i), to run consecutively; and 124 months for his third such conviction, to run consecutively. The last conviction, Warren's third for using a firearm during a crime of violence, carries a statutory minimum sentence of 25 years, but the court granted the government's motion for a downward departure under 18 U.S.C. § 3553(e) because of Warren's substantial assistance (his testimony against Thacker). The guideline range was calculated correctly, and he was sentenced at the low end of it. No evidence in this record indicates that this sentence was unreasonable. *Compare United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005) (holding that sentence within guidelines range enjoys a presumption of reasonableness), *with Rita v. United States*, 177 Fed. Ap'x 357 (4th Cir. 2006), *cert. granted*, 2006 WL 2307774 (U.S. Nov. 3, 2006) (No. 06-5754) (grant of certiorari on question of whether a sentence within guidelines range is presumptively reasonable).

Warren did not oppose the presentence report's recommendations. He initially challenged a two-level upward adjustment to his guideline range for bodily injury to one of the victims of the robbery—the customer who was pistol-whipped—but dropped this objection at the sentencing hearing. Any renewal of this challenge would be frivolous. The guidelines define "bodily injury" as "any significant injury," U.S.S.G. § 1B1.1, cmt. n.1(B), and being struck with a pistol qualifies. *See United States v. Ledford*, 218 F.3d 684, 690–91 (7th Cir. 2000). There is undisputed evidence that the customer was struck: both he and the Casey's store clerk testified, and the customer ended up seeking medical treatment. Any challenge to this or any other aspect of Warren's sentence would be frivolous.

We therefore AFFIRM the judgment in Thacker's case and grant the motion to DISMISS the appeal in Warren's case.