# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3421

JOHN DOE and JANE DOE,

*Plaintiffs-Appellants*,

*v.*

BRADY SMITH, DIANNE SHEPARD,
KATHRYN FLETCHER, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-C-2184—**David G. Bernthal**, *Magistrate Judge*.

ARGUED SEPTEMBER 21, 2005—DECIDED NOVEMBER 28, 2006

Before COFFEY, EVANS, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* This case involves disturbing allegations of child molestation committed by a public school official. John Doe and his mother Jane Doe contend that, while he was enrolled at Franklin Middle School in Champaign, Illinois, he was repeatedly molested by the school's Dean of Students, Brady Smith, and that Champaign Community Schools Unit District No. 4 and various school officials were deliberately indifferent to the abuse. The Does filed this lawsuit under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983, and various provisions of

Illinois law. Prior to trial, the district court granted summary judgment to the school district and the individually named defendants on the Does' section 1983 claims. At trial, a jury found no liability on the remaining claims.

We affirm summary judgment for the defendants on the Does' section 1983 claims against the school district and school officials (with the exception of Brady Smith), because Titles VI and IX provide adequate statutory recourse for the alleged discrimination. We also affirm the district court's decision to admit John Doe's criminal history, because it was relevant to his claim for compensatory damages.

However, we conclude the Does are entitled to a new trial for three reasons. The trial court erred when it: (1) granted summary judgment in favor of Brady Smith, because Titles VI and IX do not shield an alleged child molester from the prospect of individual liability for his constitutional tort, (2) excluded Smith's 2001 conviction for soliciting another middle school student for sex, and (3) denied the Does' motion to reconsider admitting a witness's testimony that Smith sexually abused him in the late 1970's. For these reasons, as discussed more fully below, we reverse and remand for a new trial on John Doe's section 1983 claim against Brady Smith and the Does' Titles VI and IX claims against the school district and school officials in their official capacities.

## I. BACKGROUND

John Doe first enrolled at Franklin Middle School in 1993 as a sixth grader.[1] The parties do not dispute that Doe was

---

[1] John Doe and the other putative victims are all African Americans; Smith is Caucasian. The Does contend that Smith specifically targeted young, underprivileged African American boys because they were particularly vulnerable and less likely

(continued...)

a troubled child whose classroom conduct was disruptive at times. By Doe's seventh-grade year, Brady Smith, the school's Dean of Students, had taken what appeared to be a benign and constructive interest in the boy, often counseling Doe about his conduct and grades. In Doe's eighth-grade year, however, Smith's seemingly innocent conduct revealed his alleged ulterior motive. While supervising schoolchildren before school, Smith would often seek out Doe on the playground and order him to Smith's office because he was a troublemaker.[2] At trial, Doe testified that he spent approximately ninety-five percent of his eighth-grade year in the dean's office, rather than in class. Smith never helped Doe with his homework or studies during these extended office visits; instead, according to the Does, Smith used the time to sexually groom John Doe.[3]

For instance, one Friday in February 1996, while in the dean's office, Smith invited Doe to have breakfast with him. This breakfast invitation, according to Doe, was the beginning of the molestation. At trial, Doe testified in detail about the first instance of sexual abuse. The two

---

[1] (...continued)
to be believed if they reported the molestation to authorities.

[2] Trial Tr. vol 4, 820 (May 10, 2004).

[3] Sexual grooming is "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997). The Does allege that Smith's sexual grooming of John Doe included lessening school punishment in exchange for sexual favors, promising to manipulate the judicial system in exchange for sexual favors, and enticing Doe with gifts of food, money and clothing. *See generally Doe v. Woodridge Elem. Sch. Dist. No. 68 Bd. of Educ.,* 2005 U.S. Dist. LEXIS 7023 (N.D. Ill. 2005) (sexual grooming may include giving gifts, clothing, and food, as well as making promises to use authority more leniently). Smith testified at trial that he spent $4000 to $5000 on gifts for Doe and other African American male students.

ate breakfast on a Saturday at a local restaurant and thereafter ended up at Smith's home, where they watched football. At some point during the game, Smith turned and said that Doe needed "therapy".[4] When Doe asked what "therapy" meant, Smith pulled down the boy's pants, held Doe's hands behind his back, and performed oral sex on him. During the ride back to Doe's home, Smith instructed Doe that the "therapy" was their secret and directed him not to tell anyone. The following Monday, Smith ordered Doe to his office where he again reminded him not to tell anyone about the weekend's activities.[5]

Smith's attention to Doe persisted throughout Doe's eighth-grade year and into high school. It is undisputed that Smith gave Doe money and often bought him tennis shoes, video games, and sports tickets. At the end of his eighth-grade year, Smith told Doe that he needed more "therapy" to graduate from middle school.[6] And, despite failing every class in the eighth grade, Doe was promoted to Central High School.

Perhaps the most egregious conduct Doe alleges occurred on October 4, 1996. Doe had been in an altercation with his gym teacher and landed himself in juvenile court for assault. Smith came to court and, according to Doe, before the hearing:

> We went to a little section of the courthouse and he said I was going to go to juvenile DOC but he could talk to somebody, the State's Attorney or somebody

---

[4] The Does presented evidence at trial that Smith often told his victims that they needed "therapy," which was a code word for oral sex. Smith would typically provide "therapy" to the boys while they were at the dean's home.

[5] Trial Tr. vol 4, 825-28 (May 10, 2004).

[6] Trial Tr. vol 4, 833 (May 10, 2004).

to help me but I had to agree for therapy for him to keep me out of prison.[7]

At the hearing, Doe received probation and, at the urging of Smith and the state's attorney, the juvenile court released him into Smith's custody, with the express understanding that Smith would take him to register for school.[8] Doe left the courthouse with Smith but, rather than registering him for school as the court instructed, Smith took Doe to his home where he again performed oral sex on him.[9]

Smith often gave Doe (then 15 years old and without a driver's license) the keys to his truck in exchange for "therapy". The abusive relationship ended in October 1996 when Doe wrecked Smith's SUV. Possibly to fend off raised eyebrows and suspicions of impropriety, Smith reported the truck stolen, and Doe again found himself in juvenile detention. While there, Doe told his mother of the abuse and sent a hand-written letter to the juvenile court judge stating that he was finally ready to explain why he did not go to school.[10]

---

[7] Trial Tr. vol 4, 835 (May 10, 2004).

[8] At the hearing, the following exchange took place between the state's attorney, the juvenile court judge, and Doe:

> State's attorney: "I also tell you that Mr. Smith has volunteered to take the minor to school and facilitate his enrollment today and see that it's accomplished . . . I think that's something that was agreed would be good . . . since . . . he had been the minor's dean last year."

> Court: "[John Doe], you are specifically required to go to school with Mr. Brady Smith today to enroll."

Def. Trial Ex. 61, Hr'g Tr. 13, 15 (Oct. 4, 1996).

[9] Trial Tr. vol 4, 836-37 (May 10, 2004).

[10] Pl.'s Trial Ex. 24, John Doe's Handwritten Letter to the
(continued...)

Smith was placed on administrative leave while the local police and the Illinois Department of Children and Family Services investigated Doe's allegations. Two weeks later, in early November 1996, despite an ongoing police and state agency investigation, Smith returned to work as the dean. Indeed, the school district's superintendent called Smith and welcomed him back without imposing any restrictions on his contact with students.[11] In contrast to the open arms the school district allegedly extended to Smith upon his return, Doe did not return to school after reporting the abuse. No attempt was made to inform his mother of his truancy; no support services were offered; and his school records were irretrievably lost. In January 1997, the state decided not to charge Smith with sexually abusing Doe.

Ultimately, both Smith and Doe were convicted of felonies. Smith was convicted in 2001 for soliciting another middle school student for a sex act. In 2001, an African American middle school student reported that, while in the dean's office, Smith told the boy he would give him $10 if the boy agreed to "show himself" in Smith's office. Another middle school student also reported to police that Smith had propositioned him for sex. Police subsequently obtained a wiretapped conversation corroborating the boys' stories. Smith was initially indicted for aggravated sexual assault, sexual misconduct, and indecent solicitation. However, those charges were dropped and Smith received probation for the remaining solicitation charge. Doe has amassed three felony drug convictions over the years.

---

[10] (...continued)
Honorable Thomas J. Difanis, Judge, Illinois Circuit Court, Sixth Judicial Circuit (Oct. 30, 1996).

[11] Trial Tr. vol 4, 640-41 (May 10, 2004).

In 2001, John Doe and his mother sued the Champaign Community Schools Unit District No. 4, Brady Smith, and the following school officials in their individual and official capacities: Michael Cain (the school district's assistant superintendent), Kathryn Fletcher (the principal at Franklin Middle School), Donald Hansen (the principal at Central High School), and Dianne Shepard (the dean at Central High School).[12] The Does sought relief under Titles VI and IX, 42 U.S.C. § 1983, as well as state law.

The district court granted summary judgment to the defendants on the Does' section 1983 claims, allowing their Titles VI and IX claims against the school district and pendent state law claims against Smith and the district to stand. Before trial, the district court ruled on several motions in limine. Two are relevant to this appeal: first, the district court denied the Does' motion to exclude John Doe's three felony drug convictions; in contrast, the district court granted the defendants' motion to exclude Smith's 2001 conviction for indecent solicitation of a child. Ten days before the originally scheduled trial date, after hearing about the Does' case in the media, another putative victim, Tyrone B, went to the police and reported that he too was molested by Smith as an adolescent in the late 1970's. The district court denied the Does' emergency motion to admit Tyrone B's testimony because they failed to disclose him as a potential witness. After the trial was delayed for eleven months, the Does asked the court to reconsider its earlier ruling excluding Tyrone B's testimony; the district court denied the motion to reconsider.

---

[12] The Does' claims against the Champaign school officials in their official capacities are essentially redundant and treated as suits against the school district itself. *See Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997).

Four African American men, including John Doe, testified at trial that Smith sexually groomed and abused them as students at Franklin Middle School. The defendants countered that Smith's actions were benevolent, and the dean only wanted to help the troubled youths. After a ten-day trial, the jury found no liability on the Does' claims. This appeal followed.

## II.  ANALYSIS

The Does argue they are entitled to a new trial because the district court erred when it (A) granted summary judgment on their section 1983 claims, (B) excluded evidence of Smith's conviction for soliciting a minor for a sex act, (C) admitted evidence of John Doe's three felony drug convictions, and (D) excluded Tyrone B's testimony that Smith molested him in the 1970s. We address the Does' arguments in turn.[13]

## A.  Preemption of the Does' Section 1983 Claims

John Doe and his mother sued the Champaign School District, Brady Smith and the individually named school officials, claiming violations of Titles VI and IX, as well as the Equal Protection and Due Process clauses of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983.

As to their claims brought under Titles VI and IX, the Does contend that John Doe suffered unlawful race and sex-based discrimination that interfered with his federally funded education because Smith specifically targeted African American boys for sexual grooming and abuse. Title IX provides in pertinent part that, "no person . . . shall, on

---

[13] Brady Smith, the dean who allegedly molested Doe, has not responded to this appeal.

the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[14] When a claim for damages is based on the behavior of a teacher or of some other employee of the Title IX recipient, the plaintiff must prove that "an official of the [defendant educational institution] who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Delgado v. Stegall*, 367 F.3d 668, 671 (7th Cir. 2004) (quoting *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 277 (1998)). Title IX was modeled after Title VI of the Civil Rights Act of 1964 (under which the Does assert discrimination claims as well). The statutes are parallel except that Title VI prohibits race discrimination, not sex discrimination, and applies to all programs receiving federal funds, not only education programs. See 42 U.S.C. § 2000d et seq.; *Gebser,* 524 U.S. at 286. Because the two statutes largely operate in the same manner, both conditioning an offer of federal funding on a promise by the recipient not to discriminate, our discussion of the Does' Title IX claim applies to their Title VI claims as well. *See Cannon v. University of Chicago,* 441 U.S. 677, 684-85 (1979).

The Does also assert constitutional claims against the school district and school officials pursuant to 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must

---

[14] Although Title IX expressly contemplates the termination of federal funding as a form of relief for impermissible discrimination, the Supreme Court has held that Title IX also creates an implied private right of action for monetary damages. *See, e.g.*, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992); *Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979).

allege two elements: (1) the alleged conduct was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003); *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (citing 42 U.S.C. § 1983). Here, the Does contend that the school district generally turned a blind eye to Smith's abuse of African American boys and, as such, the school district denied John Doe equal protection and substantive due process as the Fourteenth Amendment requires.[15]

The district court granted summary judgment in favor of the defendants on the Does' section 1983 claims, reasoning that those claims were barred by Titles VI and IX. We review the district court's legal conclusions de novo, *see Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 974 (7th Cir. 2004), and affirm the grant of summary judgment in favor of the school district and individually named school officials, but reverse summary judgment as to Brady Smith.

The question presented is this: does Title IX of the Education Amendments of 1972 foreclose a section 1983 suit against (1) a federally funded school for an allegedly unlawful practice or policy, (2) school officials tasked with implementing the educational program or policy, or (3) school personnel who, under color of law, allegedly violated another's federally protected rights? In *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981), the Supreme Court announced what has become known as the "sea clammers" doctrine: "When the remedial devices provided in a particular Act are

---

[15] In *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997), we held that a violation of a person's right to bodily integrity, such as in cases of sexual assault that occurs under color of law, offends the Fourteenth Amendment's guarantee of substantive due process.

sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." The heart of the parties' dispute here is whether the sea clammers doctrine precludes the Does' section 1983 claims against the defendants.

In *Delgado*, we explored the contours of the sea clammers doctrine in the context of sexual harassment in a federally funded school. In that case, a college student, alleging her professor sexually harassed her, sued her university under Title IX and the (harassing) university professor under section 1983. In reversing summary judgment to the professor, we held that, in enacting Title IX, Congress did not intend to extinguish the right to sue under 42 U.S.C. section 1983 in all cases. We note that the district court here granted summary judgment on the Does' section 1983 claims before our decision in *Delgado,* which clarified this circuit's precedent regarding Title IX preemption of section 1983 suits. Three principles buttressed our decision in *Delgado* and are applicable here.

First, with respect to claims against a recipient of federal funds, we stated that "Title IX . . . furnishes all the relief that is necessary to rectify the discriminatory policies or practices of the school itself." *Delgado*, 367 F.3d at 674. To be sure, the question of whether Title IX preempted a section 1983 suit against a federally funded education program was not before us in *Delgado* because, in that case, the college student did not assert a section 1983 claim against her university. Thus, we bring to the fore in this case what was arguably dicta in *Delgado*: under the sea clammers doctrine, there is no parallel right of action under section 1983 against a federally funded education program where Title IX provides a sufficient private right of action for the allegedly unlawful policy or practice. Therefore, we affirm the district court's grant of summary judgment to the school district on the Does' section 1983 claims against it.

The second principle of *Delgado* relates to section 1983 claims against school officials whose alleged liability arises only to the extent that they were responsible for implementing an unlawful practice or policy. Regarding the effect of a Title IX claim, there is a crucial line in our case law between suits against the alleged malefactor who is not shielded from section 1983 liability, *see, e.g.*, *Delgado*, 367 F.3d at 674, and suits against school officials implementing the challenged education practice or policy who are shielded from individual liability, *see, e.g.*, *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 639 (7th Cir. 1999). In the latter instance, we have held that a section 1983 claim is not cognizable because Title IX provides comprehensive recourse (the loss of federal funds) for the discriminatory practice or policy. "Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officials associated with those institutions." *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996).

The Does contend the district court erroneously held that Title IX preempts their section 1983 claims against defendants-appellees Cain, Fletcher, Hansen, and Shepard. Importantly, the Does' claims against these school officials are essentially identical to their claims against the school district: specifically with respect to African American boys, the school district (through the school officials) failed to follow its sexual harassment policy, resulting in a widespread practice of deliberate indifference toward the plight of Smith's victims. Because the Does' claims against the school officials relates solely to their implementation of district policy, we conclude that Title IX provides sufficient statutory recourse for the discrimination. Therefore, we affirm the grant of summary judgment in favor of school officials Cain, Fletcher, Hansen, and Shepard in their individual capacities.

The third relevant principle of *Delgado* is simple enough: Title IX does not immunize from section 1983 liability a defendant who uses his position in a federally funded education program to sexually harass and abuse students. *See Delgado,* 367 F.3d at 674. Title IX has two important anti-discrimination objectives: "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices*." Cannon,* 441 U.S. at 704. "But it is quite otherwise in a case such as this, in which the malefactor is a teacher whose malefaction is not a policy or a practice for which the school could be held liable under Title IX." *Delgado*, 367 F.3d at 674. Title IX does not shield the malefactor from personal liability for his federal constitutional tort. "The legislators who enacted Title IX would be startled to discover that by doing so they had killed all federal remedies for sex discrimination by teachers of which the school lacked actual knowledge." *Id.* at 674-75.

Ruling on the plaintiffs' motion for a new trial, the district court modified its summary-judgment opinion and held that, under our decision in *Delgado*, the Does could maintain their section 1983 claims against Smith. The court concluded that summary judgment for Smith was nonetheless proper because Smith's abuse was not state action, which is required to proceed under section 1983. Although not every action by a state employee occurs under color of state law, we conclude the district court erred in this case. "Action is taken under color of state law when it is made possible only because the wrongdoer is clothed with the authority of state law." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)) (internal quotation marks omitted).

Smith was arguably clothed with the authority of the state when, at the October 1996 delinquency hearing, the juvenile court released Doe to Smith's custody with the

express agreement that the dean would take the boy to register for school. Indeed, the state's attorney told the court that releasing Doe to Smith's custody was a good idea because Smith "had been the minor's dean last year."[16] Of course, Doe alleges that he was never taken to register for school that day, but was instead taken to Smith's home for further abuse. Assuming Doe's version of the facts is true (as we must do at the summary-judgment stage), Smith's opportunity to molest him that day was made possible because Smith used his authority as the dean to persuade the juvenile court judge to release Doe to his custody.

More generally, the Does contend that, while supervising students on the playground, Smith would often single Doe out and instruct him to report to Smith's office, where allegedly he would isolate and sexually groom Doe. Viewing the facts in the light favorable to the Does, a jury could reasonably conclude that Smith was acting under color of state law when he withheld Doe from class allegedly to sexually groom him for subsequent abuse. *See West By & Through Norris v. Waymire*, 114 F.3d 646, 647 (7th Cir. 1997) (assuming without discussion that a police officer acted under color of state law when he molested a thirteen year-old girl while escorting her home after curfew). Because Title IX does not preempt the Does' section 1983 claims against Smith and because there is a triable issue of fact as to whether Smith was acting under color of law when he allegedly abused Doe, judgment as a matter of law was improper. Therefore, we reverse the grant of summary judgment in Smith's favor. The Does' section 1983 claims against him must be reinstated.

---

[16] Def. Trial Ex. 61, Hr'g Tr. 13 (Oct. 4, 1996).

## B. Evidentiary Rulings

### 1. Admissibility of John Doe's Felony Drug Convictions

In an effort to establish his entitlement to compensatory damages, Doe's expert testified at trial that Doe suffered from post-traumatic stress disorder (PTSD) as a result of Smith's abuse. The defendants-appellees countered that, even if he suffered from PTSD, Doe's three felony convictions and stint in prison were the life stressors that caused his PTSD. The district court allowed evidence of Doe's convictions to come in for the limited purpose of informing the jury that "John Doe has been convicted of three felonies, what the felonies are for, what the sentence was for each felony and the length of his incarcerations and probation." The Does contend that introduction of the felony convictions was inflammatory and therefore improper under the Federal Rules of Evidence. We disagree.

We review the district court's evidentiary rulings for abuse of discretion, *United States v. Wilson*, 437 F.3d 616 (7th Cir. 2006), and conclude that the court was not unreasonable in denying the Does' motion to exclude evidence of John Doe's criminal history. First, contrary to the Does' assertion, the felony convictions were only admitted into evidence because Doe sought compensatory damages. The district court properly "agree[d] with Plaintiffs that John Doe's criminal history is not relevant to the issue of Defendant's liability for the civil rights claims in this case."[17]

The Does further contend that, even if the convictions were relevant to the issues of damages, they were racially inflammatory and only further confused the jury. When asked at oral argument whether a limiting instruction was sought regarding Doe's convictions, his counsel indicated that no such request was made. We have stated that

---

[17] Or. Denying Pl.'s Mot. in Limine (June 24, 2003).

a limiting instruction is most effective in reducing or eliminating possible unfair prejudice from the introduction of evidence of prior bad acts or convictions. *See United States v. Puckett*, 405 F.3d 589, 599 (7th Cir. 2005). In this case, because John Doe's convictions were admitted to rebut his claim for compensatory damages and because the Does failed to seek a limiting instruction to minimize any prejudice or confusion the evidence may have caused, we cannot conclude that the district court acted unreasonably when it admitted the evidence.

### 2. Admissibility of Brady Smith's 2001 Conviction for Indecent Solicitation of a Child

In 2001, five years after Doe was allegedly abused, an African American male student at Franklin reported to authorities that Smith asked him to expose himself while the two were in the dean's office.[18] During a subsequent investigation, another boy wore a police wire and recorded conversations in which Smith asked him for oral sex in exchange for money. Smith was subsequently convicted of indecent solicitation of a child.

At trial, the district court granted Smith's motion in limine to exclude evidence related to the 2001 conviction. The Does argue on appeal that the district court erred because the conviction was admissible under Federal Rule of Evidence 415. In reviewing the trial court's evidentiary decision for abuse of discretion, *see United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005), we agree with the Does that Smith's 2001 conviction should have been admitted at trial.

Congress enacted Rule 415, together with Rules 413 and 414, as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320935,

---

[18] Trial Tr. vol 4, 962 (May 10, 2004).

108 Stat. 1796, 2135-38. Particularly in sex offense cases, the rules were designed to supercede the general exclusionary principle set forth in Rule 404(b). *United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996). Thus, under Rule 415, in civil cases where a party is alleged to have committed sexual assault or child molestation, "evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible."[19] Fed. R. Evid. 415(a). The operational definition of "sexual assault" is set forth in Federal Rule of Evidence 413(d) and is defined as any conduct proscribed under 18 U.S.C. 109(a) or relevant state law.[20] Smith was convicted

---

[19] Federal Rule of Evidence 415(a) provides as follows:

> In a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation, evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered as provided in Rule 413 and Rule 414 of these rules.

[20] Precisely, Rule 413(d) provides:

> For purposes of this rule and Rule 415, "offense of sexual assault" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved—
>
> (1) any conduct proscribed by chapter 109A of title 18, United States Code;
>
> (2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;
>
> (3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical

(continued...)

of violating 720 ILCS 5/11-6 of the Illinois Code, which proscribes soliciting a minor for sex.[21] The question is whether, under Rule 413(d)(5), Smith's solicitation amounted to an *attempt* to engage in the proscribed conduct.[22] The district court answered this question in the

---

[20] (...continued)

pain on another person; or

(5)  an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).

By cross-reference, Chapter 109A of title 18 forbids both "sexual acts" and "sexual contact" with a minor, as well as attempts to do either of these things. *See* 18 U.S.C. §§ 2241(c), 2243(a), 2244(a)(1), (a)(3). A "sexual act" consists of vaginal, anal, or oral sex, as well as touching the genitalia of another for various purposes, including sexual gratification. *See* 18 U.S.C. § 2246(2). "Sexual contact" consists of the intentional touching (directly or through clothing) of the genitalia, anus, groin, breast, inner thigh, or buttocks of another for various purposes, including sexual gratification. *See* 18 U.S.C. § 2246(3).

[21] 720 ILCS 5/11-6(a) provides:

A person of the age of 17 years and upwards commits the offense of indecent solicitation of a child if the person, with the intent that the offense of aggravated criminal sexual assault, criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct as defined in Section 12-12 of this Code.

"Solicit" means to command, authorize, urge, incite, request, or advise another to perform an act by any means including, but not limited to, in person, over the phone, in writing, by computer, or by advertisement of any kind.

[22] For purposes of introducing evidence of child molestation under Rule 415, a "child" is defined as a minor under the age of 14. Fed.

(continued...)

negative, concluding that soliciting a minor for a sex act does not constitute an attempt to commit an offense of sexual assault. We review the district court's conclusions of law de novo. *Dunlap v. Hepp*, 436 F.3d 739, 741 (7th Cir. 2006).

The Does argue that soliciting a minor for sex necessarily constitutes a substantial step toward committing sexual assault. There is forceful support in our case law for the Does' argument. For instance, in *Gattem v. Gonzales*, 412 F.3d 758 (7th Cir. 2005), the petitioner was convicted of indecent solicitation under Illinois law for offering a minor cigarettes if she would engage in oral sex with him. We affirmed the Board of Immigration Appeals's decision that the petitioner's solicitation conviction amounted to (not merely attempt but) an act of sexual abuse because the petitioner used persuasion or inducement in an effort to convince the minor to engage in sexually explicit conduct. *Id.* at 765. Our holding in *Gattem* was based upon the following principle:

> [T]here is an inherent risk of exploitation, if not coercion, when an adult solicits a minor to engage in sexual activity. Minors as a group have a less well-developed sense of judgment than adults, and thus are at greater peril of making choices that are not in their own best interests.

*Id.* at 765.

---

[22] (...continued)
R. Evid. 414(d). The Illinois statute under which Smith was convicted indicates "child" means a person under 17 years of age. It is unclear from the record in this case whether the boy Smith solicited in 2001 was under the age of 14. Plausibly, the minor Smith solicited was over the age of 14 but under the age of 17. In light of this ambiguity in the record, we discuss the admissibility of Smith's 2001 conviction under Rule 415's parallel provision pertaining to offenses of sexual assault, which does not include a limitation on the age of the victim.

Similarly, in *Hernandez-Alvarez v. Gonzales*, 432 F.3d 763, 766 (7th Cir. 2005), the petitioner entered an Internet chat-room and conversed with an adult undercover investigator, whom he believed to be a fifteen year-old girl. The petitioner made plans to meet the "minor" for sex, but was arrested en route to the address the investigator supplied. In that case, we stated that "solicitation, a partially completed offense similar to an attempt constitutes sexual abuse of a minor under [8 U.S.C.] § 101(a)(43)(A)." *Id.* at 766 (internal citation omitted).

It is true that *Gattem* and *Hernandez-Alvarez* were immigration cases involving the definition of a sexual offense for purposes of the Immigration and Nationality Act, whereas this case requires us to interpret what constitutes a sexual offense for purposes of the Federal Rules of Evidence. Beyond the immigration context, whether soliciting a minor for sex constitutes an attempt to commit sexual assault (or child molestation for that matter) is a question of first impression for this Court. We begin our analysis with the definition of attempt: "the crime of attempt requires the specific intent to commit a crime and a substantial step towards the commission of that crime." *United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004). "A substantial step is something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime*." United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000); *see Doe v. City of Lafayette*, 377 F.3d 757, 783 (7th Cir. 2004) (merely thinking sexual thoughts about children does not constitute a substantial step toward sexual abuse).

Our dissenting colleague contends that the act of solicitation cannot constitute an attempt, and that our opinion will have a deleterious effect on well-settled criminal and civil law. To the contrary, our decision today is consistent with our circuit's precedent as set forth in *United States v. Rovetuso*, 768 F.2d 809 (7th Cir. 1985). In *Rovetuso*, the

defendants were charged with attempting to interfere with the testimony of a government witness based upon evidence that they solicited an FBI informant to murder the witness. At trial, the court instructed the jury that solicitation may constitute an attempt to commit the target offense. On appeal, the defendants attacked the jury instruction and argued that their convictions "should be reversed since solicitation alone can never constitute the required substantial step necessary to establish attempt." *Rovetuso*, 768 F.2d at 822. Holding that the jury instruction was a correct statement of law, we affirmed and reasoned as follows:

> The Federal courts have generally rejected a rigid formalistic approach to the attempt offense. Instead they commonly recognize that the determination by their particular conduct [of what] constitutes . . . [an attempt] is so dependent on the particular facts of each case that, of necessity, there can be no litmus test to guide the reviewing courts. Following this analysis, which we consider the better reasoned approach, *several federal courts have concluded that a solicitation accompanied by the requisite intent may constitute an attempt.*

*Rovetuso*, 768 F.2d at 823 (7th Cir. 1985) (quoting *United States v. American Airlines, Inc.*, 743 F.2d 1114, 1121 (5th Cir. 1984)) (emphasis added). Thus, as we recognized in *Rovetuso*, solicitation *may* constitute a substantial step toward the target offense where the solicitation is "strongly corroborative of the intent to [commit the crime], in other words, if it went beyond mere asking." *Rovetuso*, 768 F.2d at 823. Whether, given the facts of this case, Smith's solicitation amounted to attempt is a question we turn to next.

Circuits that have addressed whether soliciting a child is a substantial step toward committing a sexual offense have reached varying conclusions. For example, in *United States*

*v. Hayward*, 359 F.3d 631 (3rd Cir. 2004), the Third Circuit held that the defendant's act of lying on a bed with a fourteen year-old girl and repeatedly pushing her head toward his fully clothed penis did not constitute a "substantial step" toward oral sex and was therefore not an attempted "sexual act." *But see Hayward*, 359 F.3d at 644-45 (Fuentes, J., concurring in part and dissenting in part) (stating "the majority's repeated emphasis on Hayward's state of undress is misplaced and misleading" and reasoning that a substantial step occurred when "the only thing standing in the way of successful completion of a sexual act was a layer of fabric"). Similarly, in *United States v. Blue Bird*, 372 F.3d 989 (8th Cir. 2004), a fourteen year old girl testified that the defendant kissed her and fondled her breasts. Relying on the Third Circuit's decision in *Hayward,* the Eighth Circuit concluded that the evidence was inadmissible under Rule 413, the rule of evidence pertaining to criminal cases involving allegations of sexual assault. The court reasoned that "the fact that he desisted and withdrew when [the victim] said that she was not interested, indicates that Mr. Blue Bird at most merely solicited some kind of sexual contact. Without some more substantial step, we hold that this conduct cannot constitute an attempted sexual act or an attempt to engage in sexual contact." *Id.* at 993 (internal quotation marks omitted).

Oddly, courts have more liberally defined what constitutes a substantial step to commit a sex offense against a child in so-called cyber-molester cases. In *United States v. Bailey*, 228 F.3d 637 (6th Cir. 2000), the Sixth Circuit upheld a defendant's conviction for attempting to engage in sex with a minor where the defendant emailed his telephone number to underage girls and tried to convince them to meet him for sex. The court reasoned that the substantial step that strongly corroborated the defendant's intent to persuade the minor victims was simply the solicitous emails he sent to his putative victims. *Id.* at 640. Likewise, in

another cyber-molester case, *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004), the Eleventh Circuit held that a defendant's electronic solicitation of a government agent, who the defendant believed to be a minor, constituted a substantial step to commit a sex act against a child. *See also United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005) (finding defendant took a substantial step toward child molestation by sending solicitous emails to an undercover officer posing as a twelve year-old girl).

Applying the principles set forth in *Gattem* and *Hernandez-Alvarez*, we recognize that there is an inherent risk of exploitation when an adult solicits sex from a minor who, due to his or her under-developed sense of judgment and susceptibility to coercion, lacks the capacity to consent. Therefore, we hold that a defendant attempts to sexually assault a minor—that is, takes a substantial step toward committing the crime—when he solicits the child's complacency in a sex act. In this case, Smith's solicitous conduct occurred both when he called a middle school student to his office and offered the boy $10 to expose himself, and during subsequent recorded telephone conversations. Although it is unclear from the record precisely what solicitous conduct ultimately formed the basis of Smith's guilty plea, in either instance, his conduct went beyond thinking about or planning to have sex with a minor. Unquestionably, calling the minor to the dean's office and telling him to expose himself for money evinces Smith's intent and substantial step toward sexual assault.[23] The wiretapped conversations

---

[23] The dissent distinguishes the cyber-molester cases, reasoning that, in those cases, the defendants engaged in substantial travel to meet their putative victims, whereas Smith did not. We agree that a defendant's travel may evince a substantial step; but we disagree that the defendant's travel is necessary to establish a substantial step. Such a bright-line rule would be

(continued...)

between Smith and a minor also satisfy our attempt inquiry. Smith's coded references to sex as "therapy" corroborate his intent. Further still, Smith made a substantial step toward completing the offense when he identified his home as the place where the sex would occur and stated that money would be the form of payment. Smith's conduct is analogous to the defendants' conduct in cyber-molester cases like *Bailey* and *Murrell*. There is no appreciable difference between attempted child sexual assault using telephonic means, as in this case, and electronic means, as in the cyber-molester cases. We therefore conclude that Smith's solicitation of a child in 2001 constituted an attempt to commit a sexual offense against a minor.

The final question in our Rule 415 inquiry is whether the probative value of admitting Smith's conviction outweighs the prejudicial effect. We believe that it does. As Representative Susan Molinari, the principal House sponsor for Rules 413-415, commented in her floor statements, "In child molestation cases . . . a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sadosexual interest in children—that simply does not exist in ordinary people." Cong. Rec. H8991-92 (Aug. 21, 1994). The school district contends that, notwithstanding the admissibility of the conviction against Smith, his conviction does not tend to establish any of the Does' claims against it. We disagree. Smith's pedophilic conduct is a fact of consequence that is intertwined with the school district's potential civil liability. As we noted in our discussion of their section 1983 claims against the school district, in order to establish liability, the Does must prove that some Champaign school official who

---

[23] (...continued)
inapplicable in cases such as here where the defendant's *modus operandi* was to have his minor victims come to him by inviting them to his home or office for sex.

at a minimum had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, Smith's misconduct. Simply stated, if Smith did not do anything wrong, then necessarily the school district cannot be liable for deliberate indifference. Smith's conviction was highly probative of whether Smith's position as dean provided him with an opportunity to cultivate the boys' trust and, also, the conviction tends to discredit the defendants-appellees' theory that Smith was merely a benevolent educator. We therefore conclude that the prejudicial effect of Smith's conviction does not outweigh the probative value to the Does' case that he was convicted in 2001 of soliciting sex from another Franklin middle schooler.[24]

### 3. Admissibility of Tyrone B's testimony

After learning of the Does' case in the media, Tyrone B, another putative Smith victim, went to the police and reported that Smith abused him in the late 1970's. Tyrone B described himself as an isolated child from a single-parent family. According to Tyrone B (who was 10 or 11 years old at the time), Smith (who was then 19 or 20 years old) cultivated Tyrone B's trust and friendship by giving him tennis shoes and appealing to his love of sports. Eventually, Tyrone B started spending nights at Smith's home and in Smith's bed; more than once Tyrone B would awake to Smith performing oral sex, attempting to perform anal sex, or masturbating.

---

[24] This opinion was circulated in advance of publication to all judges of this court in regular active service pursuant to Seventh Circuit Rule 40(e). A majority did not favor a rehearing en banc on the question of the admissibility of Smith's conviction for indecent solicitation of a child.

The Does learned of Tyrone B's statement to police on June 6, 2003, ten days before trial was originally set to begin on June 16. Because the period for discovery had closed, the Does filed an emergency motion to admit Tyrone B's statement to police under Federal Rule of Evidence 415. The trial court *sua sponte* continued the trial to November 10, 2003; then the court denied the Does' emergency motion to admit Tyrone B's testimony. In November, the trial was again delayed, this time at Smith's request. On November 28, the Does asked the court to reconsider its earlier ruling excluding Tyrone B's testimony. On December 16, the district court, without explanation, denied the motion to reconsider. The trial ultimately occurred in May 2004, nearly a year after the Does initially sought to introduce Tyrone B's testimony.

We conclude that the trial court erred when it excluded Tyrone B's testimony from trial. The admissibility of eleventh-hour witness testimony presents competing interests of the parties. On the one hand, the discovery of potential witnesses in a timely fashion is an important principle of litigation. "The central aim of such rules is to minimize surprise at trial by requiring disclosure of witnesses in advance of trial." *Tyson v. Trigg*, 50 F.3d 436, 445 (7th Cir. 1995). A party against whom an eleventh-hour witness is offered is undoubtedly disadvantaged to some degree by the late disclosure. On the other hand, through no fault of its own, a party may learn of a critical witness only days prior to trial. Given the competing interests at stake and given that the trial judge is in the best position to weigh such interests as they unfold, we have declined to fashion a hard-and-fast rule regarding the admissibility of newly discovered witness testimony. *Id.* Instead, we review a trial court's decision to exclude newly discovered testimony for an abuse of discretion and will reverse only if the court's ruling was unreasonable. *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.,* 131 F.3d 625, 628 (7th Cir. 1997).

Federal Rule of Evidence 415(b) states: "A party who intends to offer evidence under this rule shall disclose the evidence to the party against whom it will be offered . . . at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause." Notwithstanding our deferential standard of review, there is a strong argument that, in ruling on the Does' emergency motion, the court should have allowed in Tyrone B's testimony for good cause. The denial of the emergency motion to admit is not the sole basis of the Does' appellate argument, however; after the trial was delayed for five months, the Does filed a motion to reconsider the exclusion of Tyrone B's testimony. The trial court denied the motion to reconsider and it is that ruling that we find unreasonable.

The Does contended that Tyrone B was a crucial witness because his story bore striking similarities to Smith's other victims but, unlike Doe, who was a convicted felon, Tyrone B was more credible because he held a steady job and went to the police on his own initiative. Moreover, Tyrone B's testimony, dating Smith's pedophilia as far back as the late 1970's, provided an important temporal context for this case. We agree that the evidentiary value of Tyrone B's testimony is apparent, and there was good cause for the Does' filing delay. As the district court noted, "through no fault of their own, Plaintiffs did not become aware of this witness until June 2003."[25] The court nonetheless reasoned that the testimony should be excluded because the delay was a violation of its discovery order. To call the Does' discovery of Tyrone B an eleventh-hour disclosure is somewhat misleading, however, given the eleven-month delay between when Tyrone B was disclosed and when trial eventually took place. Any prejudice to the defendants

---

[25] Or. Denying Pl.'s Mot. to Admit Testimony (September 16, 2003).

caused by the late disclosure could have been mitigated by affording the defendants an opportunity to depose Tyrone B during the eleven-month delay. Therefore, we conclude that the district court's denial of the Does' motion to reconsider exclusion of Tyrone's testimony was an abuse of the court's discretion.

To be sure, the jury's verdict would stand if the court's evidentiary errors were harmless. *United States v. Sutton*, 337 F.3d 792, 797 (7th Cir. 2003). "An error will be found harmful only if it had a substantial and injurious effect or influence on the jury's verdict." *Id.* (internal quotation marks omitted). We cannot conclude on this record that the trial court's evidentiary rulings were harmless error, however. The Does' argument that they are entitled to a new trial implies that the district court's exclusion of Smith's 2001 conviction and Tyrone B's testimony prejudiced their ability to establish their Titles VI and IX claims. In other words, the Does assume their claims against the school district failed because the jury did not believe Smith molested Doe, and they would have successfully carried their burden of proof had the excluded evidence come in at trial. However, this assumption is not crystal clear from the record. There are other elements necessary to establish the district's liability (i.e., whether Smith's molestation adversely affected Doe; whether the district knew of, but was deliberately indifferent to the abuse; whether Doe was damaged as a result; and whether the district proximately caused the damages). Plausibly, their claims may have failed on one of those elements. For example, the jury may have believed the district was not aware of the abuse or that Doe, a convicted felon, did not suffer damages proximately caused by the district's indifference. Unfortunately, the jury was given only a general verdict form, leaving us without the benefit of its answers to interrogatories about the case. Two scenarios that would have made the record clearer for our review are: (1) Doe's section 1983 claim

against Smith would have survived summary judgment, thus requiring the jury to determine implicitly whether Smith molested Doe; or (2) the verdict form would have required the jury to determine explicitly whether the sexual abuse occurred. Neither of these scenarios is what we have here, and thus we do not know which element(s) of their Titles VI and IX claims the Does failed to prove by a preponderance of the evidence. In light of this ambiguity in the record, we cannot say the district court's errors were harmless.

## III.  CONCLUSION

We AFFIRM the grant of summary judgment to the school officials as to the Does' section 1983 claims against them in their individual capacities. However, because Titles VI and IX do not preempt individual liability against the malefactor alleged to have committed the misconduct, we REVERSE the district court's grant of summary judgment in favor of Brady Smith on John Doe's section 1983 claim, and that claim is reinstated for trial.

We also find prejudicial error in two of the district court's evidentiary rulings. The whole of the evidentiary record paints a compelling picture that, over the course of twenty years, Smith used his various positions of authority to groom and abuse his victims sexually. By excluding Tyrone B's testimony that he was molested in the late 1970's and Smith's 2001 felony conviction for indecent solicitation of a child, the jury received an unreasonably fragmented tale of abuse. Absent this fragmentation of the evidence, there is a substantial likelihood that the outcome of the trial would have been different. We therefore REVERSE and REMAND the case for a new trial on the Does' Title VI and Title IX claims against the school district and the school officials in their official capacities.

COFFEY, *Circuit Judge*, concurring in the judgment remanding the case for a new trial and dissenting with respect to the Majority's Opinion, Section I.B.2. entitled "Admissibility of Brady Smith's 2001 Conviction for Indecent Solicitation of a Minor." In my view, Smith's 2002 conviction for indecent solicitation of a minor over the telephone does not constitute an "offense of sexual assault" under Rule 413(d) of the Federal Rules of Evidence. Thus, I agree with the magistrate judge's[1] conclusion that evidence of Smith's solicitation conviction was not admissible in Smith's civil trial.

In 2001, two African-American students at the Franklin Middle School in Champaign, Illinois informed the local police department that Brady Smith, the school's Dean of Students, had propositioned them individually (each one on separate occasions) for sex. The record reflects that one of the boys told authorities that Smith had offered him $10 if he would "show himself." The other boy claimed that Smith in one instance had asked him for sexual favors (undisclosed), allegedly stating that the boy "owed him a favor" because he helped him pass the eighth grade. Based on this information, the police obtained a wiretap warrant authorizing the installation of a recording device on Smith's home telephone. *See* 725 ILCS 5/108A-1. With the cooperation of one of the boys, the police recorded a telephone conversation that corroborated the boy's story. Smith was subsequently charged with three crimes: (1) aggravated sexual assault; (2) sexual misconduct; and (3) indecent solicitation of a minor. Those charges were later dropped as part of a plea agreement and Smith agreed to plead guilty to one count of indecent solicitation of a minor over the telephone, in violation of 720 ILCS 5/11-6(a).

---

[1] All of the parties to the case signed a waiver pursuant to 28 U.S.C. § 636(c) allowing Magistrate Judge Bernthal to conduct "any and all proceedings in [the] case."

On July 31, 2001, one of Smith's alleged victims (identified as "John Doe") and his mother (identified as "Jane Doe") filed this civil suit seeking to recover monetary damages in the United States District Court for the Central District of Illinois. The Does claimed *inter alia* that Smith and the Champaign School District violated Title VI of the Civil Rights Act of 1964, Title IX of the federal Education Amendments Act of 1972, and the Equal Protection and Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. At trial, the Does sought to introduce in evidence Smith's 2001 Illinois state conviction for soliciting a minor for sex. Smith filed a motion *in limine* to exclude from evidence any testimony concerning his Illinois state conviction, arguing that any evidence concerning the 2001 conviction was inadmissible evidence of a previous "offense of sexual assault"[2] under the Federal Rules of Evidence. *See* Fed. R. Evid. 413(d), 415. The magistrate judge[3] agreed and granted the defendant-appellee Smith's motion, finding that Smith's previous conviction under Illinois Statute 720 ILCS 5/11-6(a) did "not constitute an offense of sexual assault as defined in Rule 413[(d)]."[4] The majority would have us reverse the magistrate judge's ruling and goes on to conclude that Smith's prior conviction for indecent solicitation of a minor over the telephone does constitute an attempted "offense of sexual

[2] The defendants-appellees also claimed that evidence of Smith's 2001 Illinois state conviction was irrelevant and overly prejudicial under Rules 403 and 404(b) of the Federal Rules of Evidence.

[3] Evidentiary rulings in this case were assigned to Magistrate Judge David G. Bernthal.

[4] Alternately, the magistrate judge concluded that the evidence of Smith's conviction was precluded by Rule 404(b). In so finding, the judge concluded that such evidence would be used to prove "the character of a person in order to show action in conformity therewith," which is prohibited by Rule 404(b).

assault" under Rules 415 and 413(d) and thus admissible at trial. I disagree.

## I. DISCUSSION

In order for a prior criminal conviction to be admissible in a civil trial in federal court against a person for "conduct constituting an offense of sexual assault or child molestation," it is required that the previous attempt comport with the definition of an "offense of sexual assault," as set in the Federal Rules of Evidence. Fed. R. Evid. 415. According to Rule 413(d), the "offense of sexual assault" is defined as

*(1)  any conduct proscribed by chapter 109A of title 18, United States Code;*

*(2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;*

*(3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;*

*(4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or*

*(5) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).*

In contrast, the Illinois statute under which Smith was convicted in 2001 makes illegal the "indecent solicitation of a child . . . with the intent of [committing] aggravated criminal sexual assault, criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse." 720 ILCS 5/11-6(a). The majority attempts to shoehorn Smith's 2001 conviction for indecent solicitation of a minor into Federal Rule of Evidence 413(d)'s definition of a sexual assault by holding "Smith's solicitation of a child [over the telephone] . . . constituted an attempt to commit

a sexual offense against a minor," and thus was admissible. Majority Opinion at *24. However, because solicitation *per se* cannot constitute an attempt, *i.e.*, without a "substantial act" in furtherance of the intended crime, and since there is no evidence in the record to suggest that Smith did anything except converse over the telephone, I disagree. *See infra* pp. 34-41.

In support of the majority's conclusion that solicitation *per se* constitutes an "attempt" under Rule 413(d), it cites two decisions of this court which, although they may be considered somewhat analogous, are distinguishable. *See, e.g.*, *Gattem v. Gonzales*, 412 F.3d 758, 765 (7th Cir. 2005); *Hernandez-Alvarez v. Gonzales*, 432 F.3d 763, 766 (7th Cir. 2005). For example, *Gattem v. Gonzales* was a review of a removal decision under the Immigration and Naturalization Act, 8 U.S.C. § 101 *et seq*. While we held that the petitioner's prior conviction for solicitation constituted "sexual abuse," that decision was made in an immigration case under 8 U.S.C. § 1101 and 18 U.S.C. § 3509(a)(8), which defines "sexual abuse" much more expansively than Rule 413(d). *Compare* 18 U.S.C. § 3509(a)(8), *with* Fed. R. Evid. 413(d); *see Gattem*, 412 F.3d at 764-65. As we recognized in *Gattem*, 18 U.S.C. § 3509(a)(8), "broadly defines sexual abuse to include, among other things, the 'inducement' of a child to engage in a sexual act as well as 'other form[s] of sexual exploitation of children.'"[5] *Id.* at 761-62. In contrast, Rule 413(d) is more limited in scope and, *see supra* p. 30, isn't nearly as all-inclusive and/or broad as § 3509(a)(8) in its definition of what constitutes sexual assault and conspicuously does not include the terms "persuasion, inducement,

---

[5] Solicitation refers strictly to the "act or instance of requesting or seeking to obtain something," while inducement refers to "persuading or enticing another person to take a certain course of action." BLACK'S LAW DICTIONARY 1399, 779 (7th ed. 1999).

enticement, or coercion." 18 U.S.C. § 3509(a)(8).[6] Thus, while the solicitation of a sex act over the telephone alone may conceivably, under certain circumstances, be sufficient to constitute an attempt to persuade, induce or entice a minor into a sex act under 18 U.S.C. § 3509(a)(8), the same cannot be said for Rule 413(d) which requires proof of an attempt to commit actual sexual assault.

While the cases which the majority relies upon, *Hernandez-Alvarez* and *Gattem,* were not decided under the Federal Rules of Evidence, the Eighth Circuit has addressed this precise issue, of whether solicitation of a sex act amounts to an "attempt" pursuant to Rule 413(d), and has held that it does not. *See United States v. Blue Bird*, 372 F.3d 989, 992-95 (8th Cir. 2004). In *Blue Bird*, a witness for the government testified that when she was fourteen years of age she was approached by the defendant, Blue Bird, and solicited for sex. *Id*. at 992. Specifically, the girl stated that while she was resting on a couch, Blue Bird, "held her hand, rubbed her stomach, pushed her t-shirt up to just below her breasts, kissed her, and said, 'Let's do it.'" *Id*. at 992. The girl understood these actions and words to be a manifestation of his intention to engage in a sex act with her. *See id.* She responded by telling Blue Bird that she was not interested and he did nothing more.[7] *See id*. Applying the Rule 413(d) definition of the "offense [of] sexual assault," the Eighth Circuit concluded that while Blue Bird "*solicited some kind of sexual contact . . . [,] [w]ithout some more*

---

[6] Similarly, *Hernandez-Alvarez* was also an immigration case decided under 8 U.S.C. § 1101; 432 F.3d at 766. Although the *Hernandez-Alvarez* panel did not specifically state that it was deciding the case under the broad definition of "sexual abuse" contained in 18 U.S.C. § 3509(a)(8), the decision was based primarily on this court's previous ruling in *Gattem*. *See id*. at 466. As such, reliance on § 3509(a)(8) may be implied.

[7] Like Blue Bird, the record before us reveals that Smith solicited a minor on the telephone and nothing more.

*substantial step . . . this conduct cannot constitute an attempted 'sexual act' or an attempt to engage in 'sexual contact.'"* (emphasis added).[8]

I believe that the Eighth Circuit's approach is well advised and is the more prudent approach. And, we should apply similar reasoning in this case. For the Eighth Circuit's decision in *Blue Bird* is much more in line with the Congressional intent underlying Rules 415 and 413(d) than that proposed by the majority. While there are federal statutes, such as 18 U.S.C. § 3509(a)(8) and 18 U.S.C. § 2422(b), which criminalize solicitation *per se*, without an additional "substantial act," solicitation *per se* does not constitute attempted sexual assault under Rule 413(d). Numerous authorities, both scholarly and judicial, have long recognized that "the mere act of solicitation does not constitute an attempt to commit the crime solicited." 4 Charles E. Torcia, WHARTON'S CRIMINAL LAW § 672; *see Graham v. People*, 55 N.E. 179, 182 (Ill. 1899) ("[M]ere solicitations do not prove an attempt"); *State v. O'Neil*, 782 A.2d 209, 216 (Conn. App. Ct. 2001) ("There has been much debate whether mere solicitation constitutes an attempt . . . . Most courts will answer 'no.'") (quoting P. Low, CRIMINAL LAW 289 (1984)); *State v. Otto*, 629 P.2d 646, 649 (Idaho

---

[8] The Eighth Circuit also addressed the testimony of another witness who claimed that Blue Bird had solicited her for sex, again finding that his actions did not rise to the level of an attempted or actual sexual assault under Rule 413(d) without a more "substantial act." *Blue Bird*, 372 F.3d at 993. The second witness testified that when she was seven years old Blue Bird, "who was staying at her house, came into her bedroom, kissed her and attempted to get under her bed covers . . . [but desisted] when she told him that she was not interested." *Id.* at 992. The court again concluded that although "Blue Bird made sexual overtures to [the witness] . . . none of the acts allegedly taken by Blue Bird constituted 'sexual contact' or a 'sexual act.'" *Id.* at 993.

1981). Under criminal law, an attempt requires something more than thoughts or words; an attempt requires that the defendant undertake a "substantial act" in furtherance of the intended crime, *i.e.*, sexual assault. As this court has previously held, "[a] substantial step is something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime." *United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000). The specific state law the defendant-appellee Smith before us was convicted of violating punishes solicitation only, and though this solicitation over the phone violated Illinois' statute prohibiting indecent solicitation of a minor, 720 ILCS 5/11-6(a), it does not fit within the parameters (limits) of Rule 413(d)'s definition of an "offense of sexual assault." Indeed, in the case before us, the evidence in the record establishes only that Smith solicited a minor for a sex act over the telephone. Even were we to assume that Smith had the intent to commit the crime of sexual assault, the record falls far short of establishing that there was a "substantial act" in furtherance of the alleged planned and/or intended crime.[9] While I do not condone any of Smith's actions (in fact I condemn them), the record is barren of any evidence which would suggest that Smith did anything in this case but talk salaciously with and solicit a minor over the telephone—and words alone do not rise to the level of being legally sufficient to constitute a "substantial act" in further-ance of the crime of sexual assault. *See, e.g.*, *State v. Molasky*, 765 S.W.2d 597, 602 (Mo. 1989) (en banc) (in order for solicitation to rise to the level of an attempt, it must be accompanied by an attenuated substantial act: "An act,

---

[9] Any affirmative acts Smith did undertake, such as picking up the phone, dialing it, and so forth were acts that occurred in furtherance of, and in preparation for, the solicitation and do not constitute substantial acts in furtherance of an "offense of sexual assault" under Rule 413(d).

whether it be making a cash payment, delivering a weapon, [journeying to] a crime scene, waiting for a victim, etc., has [to have] accompanied the conversation, thus evidencing the seriousness of purpose, and making the planned crime closer to fruition."); *see also Ford v. State*, 612 So. 2d 1317, 1320 (Ala. Crim. App. 1992) (holding that "solicitation must be accompanied by an overt act, *i.e.*, 'a direct movement toward the commission [of the intended crime] after all the preparations are made.' ").

This point is illustrated by the fact that the Illinois statute that Smith pleaded guilty to in Illinois State court essentially criminalizes intent alone. *See* 720 ILCS 5/11-6(a). Illinois statute 720 ILCS 5/11-6(a) does not require that a "substantial act" in furtherance of the intended sex crime be performed and the record before us is barren and devoid of any such act. Indeed, such a requirement would be redundant, for intent in addition to a "substantial act" in furtherance of the crime would amount to attempted sexual assault, and thus 720 ILCS 5/11-6(a) would become superfluous. *See, e.g.*, 4 WHARTON'S CRIMINAL LAW § 672 (stating that in jurisdictions, such as Illinois, that have statutes that specifically criminalize solicitation, "the imposition of 'attempt' liability . . . would constitute a circumvention of the . . . legislative intent to the contrary").

The proposition that mere solicitation should not be classified as an attempt is further supported by the so-called "cybermolestor" cases. As the Eighth Circuit pointed out in *Blue Bird*, *supra*, the cybermolestor cases are distinguishable from cases such as Smith's. *See Blue Bird*, 372 F.3d at 993. The defendants in the cybermolestor cases have, without exception, engaged in something more than solicitation alone, such as substantial travel or the like to meet with the intended victim *or* the predator has been prosecuted under a statute which specifically recites and incorporates solicitation as an element of the crime, such as 18 U.S.C. § 2422(b). *See, e.g.*, *United States*

*v. Mitchell*, 353 F.3d 552, 553-54 (7th Cir. 2003) (defendant traveled from Indiana to Illinois with the intent to engage in sexual activity with what he thought was a fourteen-year-old); *United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) (defendant prosecuted under 18 U.S.C. § 2422(b)).[10] The majority misinterprets these decisions when stating that some "courts have more liberally defined what constitutes a substantial step to commit a sex offense against a child in so-called cyber-molestor cases." Majority Opinion at *23. The reason that courts have interpreted what constitutes a "substantial step" more liberally in those cases is that most cybermolestor cases prosecuted in federal court are brought under statutes such as 18 U.S.C. § 2422(b), which specifically incorporate actions that amount to solicitation into the statute. *See Mitchell*, 353 F.3d at 553-54; *United States v. Murrell*, 368 F.3d 1283, 1287-88 (11th Cir. 2004). To support its untenable position, the majority cites to *United States v. Murrell* for the proposition that solicitation of a minor for sex over the internet "constituted a substantial step to commit a sex act against a child." Majority Opinion at *23. However, contrary to the majority's reading of *Murrell*, what the Eleventh Circuit actually held in that case is that, under 18 U.S.C. § 2422(b) (not under Rule 413(d)), the defendant "took a substantial step toward inducing a minor to engage in illicit sexual acts, thereby satisfying the second element of criminal attempt." The statutory language of Rule 413(d) does not encompass crimes of inducement (unlike 18 U.S.C. § 2422), thus while solicitation alone may constitute a substantial step toward the commission of an

---

[10] However, Smith was not charged with violating 18 U.S.C. § 2422, and even if he were in violation of that statute, based on the same facts that we have in this case, his acts would not fit within the parameters of Fed. R. Evid. 413(d)'s definition of an "offense of sexual assault."

offense under § 2422, it does not constitute an attempted "offense of sexual assault" under Rule 413(d). *Murrell*, 368 F.3d at 1288 (emphasis added); Fed. R. Evid. 413(d). Just as this court has refused to read additional terms into a contract, we are obligated not to read additional language into the very specific statutory elements of legislation such as Rule 413(d)[11] simply to accomplish a desired result. *See generally Heller v. Equitable Life Assurance Society*, 833 F.2d 1253, 1257 (7th Cir. 1987) ("In the absence of a clear, unequivocal and specific contractual requirement that the insured is obligated to undergo surgery to attempt to minimize his disability, we refuse to order the same. To hold otherwise and to impose such a requirement would, in effect, enlarge the terms of the policy beyond those clearly defined in the policy agreed to by the parties."); *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994) ("We [are obligated to] apply the law as Congress drafted it. We should not disregard plain statutory language in order to impose on the statute what we may consider a more reasonable meaning."). An attempted "offense of sexual assault" as defined by Rule 413(d) and inducement under § 2422 are separate and distinct crimes, each requiring different elements of proof.

The majority, in an attempt to manufacture a "substantial act," states that Smith "called a middle school student to his office and offered the boy $10 to expose himself." *See* Majority Opinion at *24. In its attempt to have Smith's previous conviction fit within the parameters of Rule 413(d), the majority posits that: "Undoubtedly, calling the minor to the dean's office and telling him to expose himself for money evinces Smith's intent and substantial step toward sexual assault." However, the alleged unsubstantiated acts

---

[11] Which does not include solicitation in its definition of an "offense of sexual assault."

recounted above,[12] although most repug-nant, were never presented to the magistrate judge as a basis for the motion *in limine* under review and are completely unrelated to Smith's conviction for indecent telephone solicitation of a child under 720 ILCS 5/11-6(a), and only serve to confuse the issue. Defendant-appellee Smith's motion *in limine* only concerned the introduction into evidence of Smith's *conviction* for indecent solicitation of a minor over the phone in violation of 720 ILCS 5/11-6(a),[13] and our review concerns *only that conviction.* Any criminal activities that Smith allegedly engaged in which are unrelated and not a part of his conviction under 720 ILCS 5/11-6(a) for indecent solicitation of a minor have no bearing on whether that conviction constitutes an attempted "offense of sexual assault" within the meaning of Rules 413(d) and 415(a) of the Federal Rules of Evidence.

As stated *supra*, while we recognize that Smith's previous conviction for solicitation of a minor via the telephone is morally reprehensible, repulsive and indeed constituted a criminal act in Illinois, it falls short of satisfying the

---

[12] Smith was initially charged with aggravated sexual assault, sexual misconduct and indecent solicitation. However, in accordance with his plea bargain, the aggravated sexual assault and sexual misconduct charges were dropped and Smith pleaded guilty only to one count of indecent solicitation of a child, in violation of 720 ILCS 5/11-6(a). *See supra* p. *30. Thus, Smith was never convicted of aggravated sexual assault or sexual misconduct, and those alleged criminal acts convictions are not before us.

[13] The content of the telephone conversation which served as the basis for Smith's conviction under 720 ILCS 5/11-6(a) does not appear in the record on appeal, and this court has no way of knowing what Smith said to the minor. The record only reveals that Smith was convicted of violating 720 ILCS 5/11-6(a) which makes it illegal for "[a] person of the age of 17 years and up-wards . . . [to] knowingly solicit a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct."

definition of an attempted "sexual assault" under Rule
413(d). Had Congress intended to permit the introduction
of evidence concerning previous crimes, such as those that
encompass an attempt to persuade, induce, coerce or entice
a minor into a sex act, into the confines of the definition of
an "offense of sexual assault" it would have specifically
accomplished this by incorporating such language into Rule
413(d). In fact, evidence of the Congressional intent to
include such elements in the definition of sexual assault in
a similar statute is evinced by the plain language of
statutes such as 18 U.S.C. § 3509(a)(8) which specifically
criminalizes the "persuasion, inducement, enticement, or
coercion" of sexual acts with a minor. However, these laws
are much broader and more all-encompassing than Rule
413(d), which conspicuously does not include solicitation in
its definition of "offense[s] of sexual assault." The omission
of this language in Rule 413(d), reflects the clear intent
of Congress to strictly limit the introduction of potentially
prejudicial information concerning a defendant's previous
crimes only to the circumstances enumerated in the rule. As
the Supreme Court stated in *Barnhart v. Sigmon Coal Co.,
Inc.*, 534 U.S. 438, 552-53 (2002): It is a general principle of
statutory construction that when Congress has seen fit to
"include particular language in one section of a statute but
omits it in another section of the same Act, it is generally
presumed that Congress acts intentionally and purposely in
the disparate inclusion or exclusion." *Id*. As such, the
magistrate judge's ruling barring the Does from introducing
into evidence Smith's prior conviction, which was for
solicitation only, was entirely proper.

What's more, the majority's conclusion that solicitation
alone is sufficient to establish an attempt could very
well have a deleterious effect on this court's criminal
jurisprudence were it to become the law of this circuit. For
instance, under the majority's reasoning, solicitation of
a murder over the telephone would constitute attempted
murder. This would represent an unwarranted expansion of

criminal law, for the Supreme Court has long defined an attempt as requiring an "overt act" in furtherance of a crime. As the Supreme Court stated in *Spectrum Sports, Inc. v. McQuillan*, "combination, intention and overt act may all be present without amounting to a criminal attempt." 506 U.S. 447, 455 n.7 (1993) (citing *Swift and Co. v. United States*, 196 U.S. 375, 387-88 (1905)). It has been well-settled law in Illinois for over 100 years that "mere solicitations do not prove an attempt." *Graham v. People*, 55 N.E. 179, 182 (Ill. 1899). In enacting a statute such as 720 ILCS 5/11-6(a), the Illinois Legislature implicitly recognized that solicitation alone should not amount to sexual assault and, in order to protect minors from predators in an increasingly technological society, had the insight to criminalize solicitation alone. It is not our place to expand the Illinois statute to encompass an attempt to commit sexual assault, nor should we expand Rule 413(d) beyond the limits that Congress intended to include solicitation. As it has been correctly stated time and again, it is this court's place to interpret the law as written, not to substitute our judgment for that of the legislature. *See, e.g., Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994). Solicitation *per se* is beyond the bounds of an attempted "offense of sexual assault" pursuant to the clear language of Rule 413(d), and thus Smith's 2001 Illinois State conviction for solicitation was properly excluded by the magistrate judge from evidence at trial.

No. 04-3421                                              43

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*